1   DAVID C. ANDERSEN (State Bar No. 194095)
2   THE MILLER FIRM, LLC
3   108 Railroad Avenue
4   Orange, VA 22960
5   Telephone: (540) 672-4224
6   Facsimile: (540) 672-3055
7   Email: dandersen@doctoratlaw.com

8

9   **UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA**
10                        **SAN FRANCISCO DIVISION**

11

12                                                    Case No. <u>C 08-03394 WDB</u>

13                                          :
14   RONALD T. HAMMER,                      :
15   REPRESENTATIVE OF THE                  :
16   ESTATE OF RETHA M. SPAIN               :
17                                          :
18   Plaintiff,                             :        PLAINTIFF'S NOTICE
19                                          :        OF MOTION
20                                          :        AND MOTION
21                                          :        FOR REMAND WITH
22                                          :        SUPPORTING
23                                          :        MEMORANDUM;
24   v.                                     :        [PROPOSED] ORDER
25                                          :
26                                          :        HEARING:
27   SMITHKLINE BEECHAM                     :        DATE: October 21, 2008
28   CORPORATION                            :        TIME: 4:00 P.M.
29   d/b/a GLAXOSMITHKLINE and              :        COURTROOM: 4
30   MCKESSON CORPORATION                   :        JUDGE:  Honorable Wayne D. Brazil
31                                          :
32   <u>Defendants</u>                      :

# TABLE OF CONTENTS

**TABLE OF CONTENTS**                                    ii

**TABLE OF AUTHORITIES**                                 iii

**TABLE OF EXHIBITS**                                    vi

**NOTICE**                                               1

    I.    **INTRODUCTION**                        2

    II.    **FACTUAL BACKGROUND**                  4

    III.    **STANDARD OF REVIEW**                 4

    IV.    **LACK OF SUBJECT MATTER JURISDICTION**  5

    V.    **PLAINTIFF HAS ALLEGED A VALID CAUSE OF ACTION AGAINST MCKESSON**   7

    VI.    **DEFENSE OF LEARNED INTERMEDIARY IS INAPPROPRIATE**   9

    VII.    **FEDERAL QUESTION JURISDICTION**     9

    VIII.    **THE PRESCRIPTION DRUG USER FEE REAUTHORIZATION ACT ABOLISHES DEFENDANT'S ALLEGED PREEMPTION DEFENSE**   12

    IX.    **CONCLUSION**                         12

**[PROPOSED] ORDER**                                     14

# TABLE OF AUTHORITIES

**I.    CASES**

### A.  UNITED STATES SUPREME COURT

*Gully v. First National Bank,*
   299 U.S. 109, 113 (1936)………………………………………………………..10

*Caterpillar, Inc. v Williams,*
   482 U.S. 386, 392 (1987)……………………………………………….………10

*Beneficial National Bank v. Anderson,*
   539 U.S. 1, 6-8 (2003)……………………………………………………….…...10

*Grable & Sons Metal Prods. V. Darue Eng'g & Mfg.,*
   545 U.S. 312 (2005)…………………………………………………………..........10

*Franchise Tax Board v. Constr. Laborers Vacation Trust for S. Calif.,*
   463 U.S.1 (1983)……………………………………………………………………11

*Merrell Dow Pharm., Inc., v. Thompson,*
   478 U.S. 804 (1986)………………………………………...…………11

### B.  CALIFORNIA COURTS

*Perkins v. Superior Court,*
   117 Cal.App.3d 1, 6 (2nd Dist. 1981)…...……………………………...……………8

*C.f., Barth v. B.F. Goodrich Tire Co.,*
   265 Cal. App.2d.228 (1st Dist. 1968)…………………………………...…………9

### C.  SECOND CIRCUIT COURT OF APPEALS

*Sullivan v. American Airlines, Inc.,*
   424 F.3d 267, 276 (2d Cir. 2005)…………………………………...…………9

### D.  THIRD CIRCUIT COURT OF APPEALS

*Boyer v. Snap-On Tools Corp.,*
   913 F.2d 108 (3rd Cir. 1990)…………………………………...………..………6

### E.  FIFTH CIRCUIT COURT OF APPEALS

*Dodson v. Spiliada Maritime Corp.,*
   951 F.2d 40, 42-43 (5th Cir. 1992)………………………….…………...…………5

*Green v. Amerada Hess Corp.*,
    707 F.2d 201, 204 (5th Cir. 1983)……………………...……………….….…………….6

*Jernigan v. Ashland Oil Co.*,
    989 F.2d 812, 815-816 (5th Cir. 1993)……………………...………...…………….6

*Ford v. Elsbury*,
    32 F.3d 931, 938 (5th Cir. 1994)…………………………...……..…………….7

*Green v. Amerada Hess Corp.*,
    707 F.2d 201, 205 (5th Cir. 1983)…………………………...…….….……………...7


**F. NINTH CIRCUIT COURT OF APPEALS**

*Morris v. Princess Cruises, Inc.*,
    236 F.3d 1061, 1067 (9th Cir. 2001)…………………...…………….....……………….4

*McCabe v. General Foods Corp.*,
    811 F.2d 1336, 1339 (9th Cir. 1987)……………………...……...…………….4

*Peloza v. Capistrano Unified Sch. Dist.*,
    37 F.3d 517, 521 (9th Cir. 1994)…………………...…………………...………….5

**G. UNITED STATES DISTRICT COURTS FOR NORTHERN, CENTRAL,
EASTERN, AND SOUTHERN DISTRICTS OF CALIFORNIA**

*Plute v. Roadway Package Sys., Inc.*,
    141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)…………………………….……………….4

*Brown v. Allstate, Ins. Co.*,
    17 F.Supp.2d 1134 (D. Cal. 1998)……………………………………………….7


**H. UNITED STATES DISTRICT COURTS FOR
NON-CALIFORNIA DISTRICTS**

*Little v. Purdue Pharma, LP*,
    227 F. Supp. 2d 838, 847 n. 12 (S.D. Ohio 2002)…………………………….…………….5

*Freeman v. Bragunier Masonry Contractors, Inc.*,
    928 F. Supp. 611 (Dist. Md. 1996)…………………………………...…………….7

*State of Utah v. Eli Lilly & Co.*,
    2007 U.S. Dist. Lexis 65571 (D. Utah 2007)………………………………….……….11

iv

*Commonwealth of Pennsylvania v. Eli Lilly & Co., Inc.,*
    2007 U.S. Dist. Lexis 46946 (E.D. Pa. 2007)………………………………………………11


## I.   CALIFORNIA SUPREME COURT

*Anderson v. Owens-Corning Fiberglas Corp.,*
    53 Cal.3d 987, 281 Cal. Rptr. 528, 810P.2d 549 (1991)……………………………….……8

*Jimenez v. Superior Court,*
    29 Cal.4th 473 (2002)…………...……………………………………………………………8




## II.    OTHER AUTHORITIES

28 U.S.C. § 1332 (2005)…………………………………………………………...……4, 5

28 U.S.C. § 1441(b) (2002)……………………………………………………………………4

28 U.S.C. § 1447(c) (1996)……………………………………………………………………5

Cal. Bus. & Prof. Code § 17200, et seq (2007)……………………………………….………6

Consumer Legal Remedies Act, Civ. Code § 1750 et seq. (2008) ("CLRA")…………...…….6

California Code of Civil Procedure § 425.10(b)(1) (2008)………………………………………7

28 U.S.C. § 1441(a) (2002)…………………………………………………………...………9

*Order Denying Plaintiff's Motion to Remand,*
*In re: Phenylpropanolamine(PPA) Products Liability Litigation,*
MDL No. 1407, Docket No. C02-423R,
Slip Op. (W.D. Wash. Nov. 27, 2002)…………………………………………...………8

71 Fed. Reg. 3922 (Jan. 24, 2006)………………………………………...…………………12

Prescription Drug User Free Reauthorization Act (PDUFA),
H.R. 3580H.R. 3580 (Sept. 27, 2007)……………………………………………………12

1

**<u>TABLE OF EXHIBITS</u>**

2
3
4

A.    Notice of Ruling with attached Revised Ruling on Request for Reconsideration by Judge Victoria Chaney), *Vioxx Cases*, California Superior Court for Los Angeles County, Case No. JCCP 4347, filed on or about May 22, 2006.

5

6

B.    *Reid, et al., v. Merck & Company, Inc., et al.*, Case No. CV 02-00504 NM (RZx)

7

C.    *Black, et al., v. Merck & Company, Inc., et al.*, Case No. CV 03-8730 NM (AJWx)

8

D.    *Albright, et al. v. Merck & Co., Inc., et al.*, No CV 05-4025 JFW (MANx)

9

E.    *Aaroe, et al., v. Merck & Co., Inc., et al.*, No CV05-5559 JFW (CWx)

10

11

F.    *Maher v. Novartis Pharmaceuticals Corp., et al.,* No. 07-852 WQH (JMA)

12

G.    Declaration of David C. Andersen Regarding Exhibits A-F.

13

14

1

## NOTICE

2

3     **PLEASE TAKE NOTICE** that on October 21, 2008,  at 4:00 P.M., or as soon thereafter as the

4    matter may be heard in Courtroom 4A of the above entitled Court, Plaintiff will move the Court to

5    remand this action to the SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR AND IN

6    THE COUNTY OF SAN FRANCISCO, NORTHERN DISTRICT.  This remand is proper as no

7    diversity exists among the parties as required by 28 U.S.C. § 1132 and there is no substantial federal

8    question requiring federal jurisdiction.

9         This motion will be based on this Notice of Motion and Motion, the Memorandum of Points

10    and Authorities filed herewith, and the pleadings and papers filed herein.

11

12    Dated: August 11, 2008

13

14                              _____/s/_____

15                              David C. Andersen (Bar No. 194095)

16                              THE MILLER FIRM, LLC

17                              Attorneys for Plaintiff

18                              108 Railroad Avenue

19                              Orange, VA 22960

20                              Phone: (540) 672-4224

21                              Fax: (540) 672-3055

22                              Email:dandersen@doctoratlaw.com

23

Plaintiff's Motion for Remand and Supporting Memorandum

## PLAINTIFF'S MOTION FOR REMAND AND
## SUPPORTING MEMORANDUM

Plaintiff, by attorneys, THE MILLER FIRM, LLC, file this Motion for Remand against Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") and McKesson Corporation ("McKesson") (collectively "Defendants"), and state as follows:

## I.
## INTRODUCTION

Plaintiff filed a complaint in the Superior Court of California against GSK and McKesson, for injuries and damages suffered when Plaintiff used Avandia® (hereinafter, "Avandia"), as manufactured and distributed by all of the Defendants.  McKesson is a "citizen" of the State of California for diversity purposes and may, from time to time, be referred to as "Non-Diverse Defendant".  GSK may be referred to as "Diverse Defendant".

On July 14, 2008, GSK removed this action alleging that McKesson, the only in-state Defendant, has been fraudulently joined.  GSK's claims that McKesson can not be liable and that it is a fraudulent defendant were raised and rejected in Vioxx cases filed in the California Superior Court for Los Angeles County, JCCP Case No. 4247.  (Notice of Ruling with attached Revised Ruling on Request for Reconsideration by Judge Victoria Chaney), *Vioxx Cases*, California Superior Court for Los Angeles County, Case No. JCCP 4347, filed on or about May 22, 2006, Andersen Declaration at **Exhibit A**).

Other California courts have granted remand based upon the same arguments herein raised. (See rulings in *Reid, et al., v. Merck & Company, Inc., et al.*, Case No. CV 02-00504 NM (RZx) (Andersen Declaration at **Exhibit B**); *Black, et al., v. Merck & Company, Inc., et al.*, Case No. CV 03-8730 NM, 2004 U.S. Dist. LEXIS 29860, at *16 (C.D. Cal. Mar. 3, 2004) (Andersen Declaration at **Exhibit C**); *Albright, et al. v. Merck & Co., Inc., et al.*, No CV 05-4025 JFW,  (MANx)

2

(Andersen Declaration at **Exhibit D**); *Aaroe, et al., v. Merck & Co., Inc., et al.*, No CV05-5559 JFW, 2005 U.S. Dist. LEXIS 40744, at \*7 (C.D. Cal. Sept. 1, 2005) (Andersen Declaration at **Exhibit E**); *Maher v. Novartis Pharmaceuticals Corp., et al.*, No. 07-852 WQH, 2007 U.S. Dist. LEXIS 58984, at \*13 (S.D. Cal. Aug. 10, 2007) (Andersen Declaration at **Exhibit F**).

GSK argues: (1) that Plaintiff failed to state a cause of action against the resident defendant; (2) that Plaintiff's claims necessarily raise substantial federal questions; (3) that under preemption principles, FDA approval of labeling under the act preempts conflicting or contrary State law. As will be set forth below, GSK is wrong on these counts, and this case should be remanded to state court.

First, contrary to GSK's representation, Plaintiff pleaded facts sufficient to state the multiple causes of action against McKesson which will be outlined below. Further, GSK asks this Court to ignore the numerous times McKesson is identified by name within Plaintiff's Complaint, and the factual detail of McKesson's activities by name. Plaintiff has pleaded facts to satisfy all of the elements to state a products liability claim under California law. Accordingly, GSK's first basis for remand must be rejected.

Second, GSK cannot demonstrate that Plaintiff has raised a substantial federal question that would require federal jurisdiction. As explained below, Plaintiff's claims do not raise a "substantial federal question" because application of federal law is not necessary for their resolution. Conversely, Plaintiff's claims rest in State causes of action in which the State of California has a significant judicial interest, requiring these claims to be tried in State Court.

Third, with the adoption of the Prescription Drug User Fee Reauthorization Act (PDUFA), signed into law September 27, 2007, any argument by Defendant that FDA approval of product labeling preempts state law claims is without merit.

## II.
## FACTUAL BACKGROUND

1.    On July 10, 2008 Plaintiff filed an action in the Superior Court of the State of California for the County of San Francisco.

2.    Defendant SmithKline Beecham Corp. d/b/a Glaxosmithkline was served with Summons and Complaint on July 17, 2008.

3.    Defendant McKesson was served with Summons and Complaint on July 17, 2008.

4.    On July 14, 2008, Defendants filed their Notice of Removal.

## III.
## STANDARD OF REVIEW

The burden to support removal is always upon the party seeking it.  Here, that is not Plaintiff.  Should GSK supply an opposition to remand, Plaintiff reserves the right to address anything new and do not waive the right to attach any appropriate documentation to support their position.

For removal based on diversity, 28 U.S.C. § 1332 requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  Additionally, removal is not allowed where one of the defendants is a "citizen of the State in which such action is brought." *See* 28 U.S.C. § 1441(b) (2002).  McKesson is a "citizen" of California.  If McKesson can be a party, removal is improper.  Joinder of a resident defendant is only fraudulent if the plaintiff fails to state a cause of action against that defendant and the failure is obvious according to the settled rules of the state. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

"There is a presumption against finding fraudulent joinder, and defendants who assert that [the] plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.,* 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001).  Courts have denied

4

claims of fraudulent joinder when there is any possibility that a plaintiff may prevail on the cause of action against the in-state defendant. *Id.* at 1008-1012. "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Id.* at 1008 (quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992)).

Furthermore, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous or technically defective pleading must be resolved in favor of remand; a lack of clear precedent does not render the joinder fraudulent. *Plute*, 141 F.Supp 2d at 1008; *see also Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994) (courts must interpret general allegations to "embrace whatever specific facts might be necessary to support them"); *Little v. Purdue Pharma, LP*, 227 F. Supp. 2d 838, 847, n. 12 (S.D. Ohio 2002) ("in light of the heavy burden on defendants to show the non-diverse defendants were fraudulently joined, it seems to this Court that a finding of fraudulent joinder should not be based on factual deficiencies within the pleadings which are correctable by amendment").

Here, Defendants do not show by clear and convincing evidence that under no circumstances could McKesson be liable for any of Plaintiff's claimed injuries.

## IV.
## LACK OF SUBJECT MATTER JURISDICTION

Federal diversity jurisdiction requires that all parties to the action be "citizens of different states" or "citizens or subjects of a foreign state." 28 U.S.C. § 1332 (2005). 28 U.S.C. § 1447(c) (1996) governs the procedure after removal, and allows for remand of any action where the district court lacks subject matter jurisdiction. Specifically, 28 U.S.C. § 1447(c) states in pertinent part: "If any time before final judgment it appears that the district court lacks subject matter jurisdiction, the

1    case shall be remanded."  Defendant's removal is improper because the district court lacks subject

2    matter jurisdiction as the local corporation has been properly joined.

3            Defendants imply that the parties to this action are completely diverse because the local

4    defendant, McKesson, is a fraudulently joined defendant.  To succeed, Defendant must point to

5    some California law that clearly indicates joinder is fraudulent.  Plaintiff has sued McKesson under

6    (1) negligence; (2) negligent failure to warn; (3) negligence per se; (4) negligent misrepresentation;

7    (5) breach of express warranty; (6) breach of implied warranty; (7) strict products liability –

8    defective design; (8) strict products liability – manufacturing and design defect; (9) strict products

9    liability – failure to adequately warn; (10) fraudulent misrepresentation; and (11) violations of

10   California Unfair Trade Practices and Consumer Protection Law which are recognized causes of

11   action against distributors and designers of medications in the State of California.  *See*  Cal. Bus. &

12   Prof. Code § 17200 (2007), et seq. and the Consumer Legal Remedies Act, Civ. Code § 1750 et seq.

13   (2008) ("CLRA").

14           Defendants seek a ruling that would in effect decide substantial factual disputes and

15   terminate Plaintiff's causes of action against McKesson.  The effect of allowing removal would be

16   to find there is no way McKesson could ever have any liability here.  However, a district court must

17   not decide substantive factual issues in order to answer the threshold question of whether joinder of

18   an in-state defendant is fraudulent.  *Green v. Amerada Hess Corp.,* 707 F.2d 201, 204 (5th Cir.

19   1983).  The only issue the court should address is its own jurisdiction.  *Id.* at 204.

20           The removing defendant has the heavy burden of alleging and proving the non-diverse

21   party's joinder is "fraudulent."  *Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815-816 (5th Cir. 1993);

22   *see also Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3rd Cir. 1990).  In order to establish

23   that plaintiff fraudulently joined an in-state defendant for purposes of defeating removal

6

jurisdiction, the defendant must show either (1) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, or (2) that there has been outright fraud in plaintiff's pleading of jurisdictional facts. *Freeman v. Bragunier Masonry Contractors, Inc.,* 928 F. Supp. 611, 612 (Dist. Md. 1996); *see also Ford v. Elsbury*, 32 F.3d 931, 938 (5th Cir. 1994); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).

As is more fully set out below, the allegations of the Complaint state causes of action against McKesson. In addition, the Southern and Central Districts of California have all held, in cases involving substantially similar allegations, that McKesson is *not* fraudulently joined in cases involving the pharmaceutical drugs. *See, e.g. Black, Albright, Aaroe, and Maher* attached as Exhibits "C", "D", "E" and "F". These cases, coupled with substantive law, support that McKesson is not fraudulently joined.

## V.
## PLAINTIFF HAS ALLEGED A VALID CAUSE OF ACTION AGAINST MCKESSON

Plaintiff has alleged all causes of action against McKesson. Defendants assert that McKesson is fraudulently joined because "plaintiff has failed to make any material allegations against it". *See* Def.'s Not. of Removal ¶ 21. In support of this argument Defendants rely on *Brown v. Allstate Insurance*, a case in which the Court found fraudulent joinder because the defendants were not individually named in the body of the complaint and there were no allegations made of wrongdoing by any of the defendants. *Brown v. Allstate Insur.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998). Here, however, McKesson is both named *throughout* the body of the complaint and allegations of wrongdoing are made against it.

Without these concerns, under California law, Plaintiff's Complaint must only contain, "a statement of the facts constituting the cause of action in ordinary and concise language." California Code of Civil Procedure § 425.10(b)(1) (2008). This has been interpreted to mean that Plaintiff is

required only to plead "sufficient facts to apprise the Defendant(s) of the basis upon which the Plaintiff(s) [are] seeking relief."  *Perkins v. Superior Court*, 117 Cal. App. 3d 1, 6 (Cal. 2nd Dist. Ct. App. 1981).

Defendants' argument that McKesson is fraudulently joined is directly contrary to well established strict liability law in California.  A distributor, unlike pharmacists, is liable for failure to warn.  *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549, 552 (Cal. 1991); *see also Jimenez v. Superior Court*, 58 P.3d. 450, 453 (Cal. 2002).  Therefore, specific and valid allegations of failure to warn can be made against each GSK and McKesson.

Second, it is not inconsistent to argue that *both* GSK and McKesson were aware, or should have been aware, of the scientifically knowable risks of Avandia.  McKesson is neither a pharmacy retailer nor a physician, which are specified as parties not able to be sued for failure to warn.  *See Order Denying Plaintiff's Motion to Remand, In re: Phenylpropanolamine (PPA) Products Liability Litigation*, MDL No. 1407, Docket No. C02-423R, Slip Op. (W.D. Wash. Nov. 27, 2002). McKesson is, among other things, a sophisticated pharmaceutical distributor, in the direct chain of distribution of Avandia, that knew or should have known of the dangers of Avandia and warned Plaintiff of those dangers.  Defendant's reliance on any case precluding claims against doctors and drug stores would be misplaced.

It is alleged in Plaintiff's Complaint that McKesson, by and through its agents, worked with the Diverse Defendant to develop and distribute Avandia without appraising Plaintiff and/or the treating physicians of known or knowable dangers and without adequately warning of those known or knowable dangers.  McKesson had a program in place to assist in product promotion.  McKesson was not merely acting as a conduit for the drug, but rather it was actively engaged in promotion. Therefore, it cannot hide behind the cloak of innocence which could attach under any strict

interpretation of the lack of fault that could be attached to a distributor which is merely a clearinghouse.  *C.f., Barth v. B.F. Goodrich Tire Co.,* 265 Cal. App. 2d.228 , 247 (Cal. Dist. Ct. App. 1968).

There is absolutely nothing inconsistent in the pleadings.  Plaintiff has adequately pled facts to state causes of action against *both* diverse and non-diverse Defendants.

## VI.
## DEFENSE OF LEARNED INTERMEDIARY IS INAPPROPRIATE

Defendant states that based on the "learned intermediary" doctrine, McKesson bore no duty to warn Plaintiff.  *See* Notice of Removal at ¶ 25.  GSK is wrong.  Initially, the ruling by Judge Chaney (attached as **Exhibit A**), disposes of the learned intermediary doctrine at this stage of the litigation, as the mere allegation that the warnings were insufficient in total, means Defendant cannot use it to foreclose any possibility of recovery before that issue is made the subject of discovery.  It may be that whoever hears the evidence may conclude that the learned intermediary doctrine defense may be implemented as a matter of fact or law.  That is no support for removal in the face of a valid remand motion.

## VII.
## FEDERAL QUESTION JURISDICTION

Plaintiff's claims do not raise a "substantial federal question" because application of federal law is not necessary for their resolution.  Under the general federal removal statute, 28 U.S.C. § 1441(a) (2002) , unless otherwise provided by Congress, a defendant may only remove a "civil action brought in a State court of which the district courts of the United States have original jurisdiction."  Absent diversity jurisdiction, a civil action filed in state court may only be removed if the claim "arises under" federal law.  *Sullivan v. American Airlines, Inc.*, 424 F.3d 267, 276 (2nd Cir. 2005).  The statutory requirement that there be original jurisdiction means that a question of

federal law "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Gully v. First National Bank,* 299 U.S. 109, 113 (1936).  Whether the claim arises under federal law must be determined by applying this "well-pleaded complaint" rule. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The plaintiff's statement of the cause of action must affirmatively show it is based on federal law.  *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6-8 (2003).

A rare form of "arising under" jurisdiction is created if the complaint, under scrutiny, contains state law based theories of recovery that implicate significant federal issues.  *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312 (2005).  This form of "arising under" jurisdiction has been stated as a two-part test.  First, it must appear from the complaint that "the right to relief depends upon the construction or application of federal law" and involves a contested federal issue.  *Id.* at 313.  Further, the underlying federal issue must be sufficiently "substantial" such that there is a clear indication of a "serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313.

The mere existence of a federal issue is insufficient to confer jurisdiction.  Rather, the second prong requires that the "federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id* at 313. Should the purported federal question fail under either of the inquiries, there is no federal jurisdiction.

Because Plaintiff relies on multiple causes of action  against distributors and designers of medications recognized in the State of California, including violations of California Unfair Trade Practices and Consumer Protection Law, application of the well-pleaded complaint rule requires that they be permitted to pursue their claims in state court.

10

Defendants' removal is improper as Plaintiff states claims that do not involve a substantial contested federal issue.  In order for a federal question to be significant or substantial, the federal issue "must be actually disputed, and essential to the adjudication of the plaintiff's claim."  *State of Utah v. Eli Lilly & Co.,* 509 F. Supp. 2d 1016, 1022 (C.D. Utah 2007); quoting *Commonwealth of Pennsylvania v. Eli Lilly & Co. Inc.*, 511 F. Supp. 2d 576, 580 (E.D. Pa. 2007) (citing *Grable*, 545 U.S. at 313).  Under the substantial federal question doctrine, a state law cause of action actually arises under federal law, even though Congress has not provided a federal private right of action, "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Board v. Constr. Laborers Vacation Trust for S. Calif.,* 463 U.S. 1, 9 (1983).

However, the incorporation of a federal standard in a state law action does not implicate the substantial federal question doctrine.  *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986).  As in the current case, *Merrell Dow* involved allegations both that inadequate warnings on a drug's label and promotion of that drug were in violation of the Federal Food, Drug & Cosmetic Act.  *Id.* at 806.  The FDCA does not create a private right of action for violation of the misbranding provision.  The Court found that the mere presence of a federal standard embedded in a state law cause of action is not enough to warrant federal question jurisdiction.  *Id.* at 810-12.  The Court noted the "significance of the necessary assumption that there is no federal private cause of action…cannot be overstated.  *Id.* at 812.  Further, the Court concluded that "the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal question jurisdiction." *Id.* at 814.

1
2
3
4

**VIII.**

**THE PRESCRIPTION DRUG USER FEE REAUTHORIZATION ACT ABOLISHES DEFENDANT'S ALLEGED PREEMPTION DEFENSE**

5    Defendant cites 71 Fed. Reg. 3922, 3934 (Jan. 24, 2006), claiming that under this rule FDA

6    approval of labeling under the act preempts conflicting or contrary State law.  However, this claim

7    is without merit.  On September 27, 2007, the Prescription Drug User Free Reauthorization Act

8    (PDUFA) H.R. 3580 was signed into law.[1]  Congress, for the first time through legislation, placed

9    the burden of updating the warning label of a prescription drug squarely on the drug company.  *See*

10   PDUFA, H.R. 3580.  The law expressly stipulates that the manufacturer has the responsibility to

11   promptly update its drug label when the manufacturer becomes aware of safety information that

12   should be added to the label.  Thus, even if the FDA does not act in requiring a label change, the

13   drug company still has the burden to update its warning label.

14   The attempt by the FDA in the Preamble to it recent rules to create a purported preemptive

15   effect of FDA-approved labels, 71 Fed. Reg. 3922 (Jan 24, 2006), is now clearly superseded by

16   federal law.  With the adoption of PDUFA, any argument by Defendant that FDA-approval of

17   product labeling preempts state law claims related to the adequacy of prescription drug warnings is

18   undoubtedly moot.  The burden of updating the label with respect to the serious side effects of

19   Avandia rests squarely with the Defendant.

20
21

**IX.**

**CONCLUSION**

22
23   Defendant has failed to meet its heavy burden to remove this state law action.  For all the

24   foregoing reasons, Plaintiff respectfully requests that this action be remanded to the Superior Court

25   of California, County of San Francisco.

---

[1] PDUFA became effective on October 1, 2007.

12

1

2

3

4

5

6    Dated: 8/11/2008                    Respectfully submitted,

7

8

9                                        _____/s/_____

10                                       David C. Andersen (Bar No. 194095)

11                                       THE MILLER FIRM, LLC

12                                       Attorneys for Plaintiff

13                                       108 Railroad Avenue

14                                       Orange, VA 22960

15                                       Phone: (540) 672-4224

16                                       Fax: (540) 672-3055

17                                       Email:dandersen@doctoratlaw.com

1

2

3

4

5

6

7

8

9

10

**[PROPOSED] ORDER**

      Having read and considered all arguments made in the above matter, and having decided that based on all moving papers and arguments that no diversity and no federal question exists in this case, it is hereby ordered that this case be remanded to the Superior Court of San Francisco.

_____

Dated                                                                      Honorable

1

2 <u>**CERTIFICATE OF SERVICE**</u>

3

4      I hereby certify that on August 11, 2008, I electronically filed the foregoing with the Clerk

5 of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the

6 following:

7

8                           Alan J. Lazarus

9                           Krista L. Cosner

10                  Drinker Biddle & Reath LLP

11               50 Fremont Street, 20th Floor

12                San Francisco, CA 94105

13

14

15

16 Dated: August 10, 2008

17

18                         Respectfully submitted,

19

20

21                _____/s/_____

22                David C. Andersen (Bar No. 194095)

23                THE MILLER FIRM, LLC

24                Attorneys for Plaintiff

25                108 Railroad Avenue

26                Orange, VA 22960

27                Phone: (540) 672-4224

28                Fax: (540) 672-3055

29                Email:dandersen@doctoratlaw.com

30

31

# EXHIBIT A

05/23/2006 10:44 FAX 2134811554   GIRARDI & KEESE                                    ☐002

Case 4:08-cv-03394-WDB   Document 11-2   Filed 08/11/2008   Page 23 of 15
Case 3:07-cv-06328-MHP   Document 5-2   Filed 12/14/2007   Page 1 of 14

1   GIRARDI | KEESE
    1126 Wilshire Blvd.
2   Los Angeles, CA 90017
    (213) 977-0211
3   FAX (213) 481-1554
    THOMAS V. GIRARDI - BAR NO. 36603
4   JAMES G. O'CALLAHAN, STATE BAR NO. 126975
5
    Plaintiffs Liaison Counsel
6
7
8
9                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                              COUNTY OF LOS ANGELES
11   Coordination Proceeding Special Title (Rule 1550(b))
12
13   **This Document Applies to All**            )   CASE NO. JCCP No. 4247
                                                  )
14   **VIOXX ® CASES**                            )   Assigned to the Honorable Victoria
                                                  )   Chaney, Department 324
15                                                )
                                                  )   NOTICE OF RULING
16                                                )
17
18   TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:
19          Pursuant to the court's minute order, attached hereto is a copy of the court's revised ruling
20   pertaining to the distributor defendant's demurrer in the above-captioned matter.
     Dated: May 22, 2006
21                                                    GIRARDI AND KEESE
22
                                             By:   _James G. O'Callahan_
23                                                    James G. O'Callahan
                                                      Plaintiffs' Liaison Counsel
24
25
26
27
28

                                                -1-
EXHIBIT 3
-37-

*Vince E71*

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 05/16/06

DEPT. 324

HONORABLE VICTORIA CHANEY    JUDGE    E. SABALBURO    DEPUTY CLERK

HONORABLE    JUDGE PRO TEM    ELECTRONIC RECORDING MONITOR
#7

F. ROJAS, C.A.    Deputy Sheriff    NONE    Reporter

| JCCP4247 | Plaintiff | |
| | Counsel | |
| COORDINATION PROCEEDING SPECIAL | | RECEIVED |
| TITLE RULE (1550 (b)) | Defendant | MAY 1 7 2006 |
| | Counsel | |
| VIOXX Cases | | GIRARDI & KEESE |

NO APPEARANCES

## NATURE OF PROCEEDINGS:

REVISED RULING ON SUBMITTED MATTER HEARD APRIL 10, 2006

The Court hereby makes its revised ruling pursuant to the "REVISED RULING ON REQUEST FOR RECONSIDERATION" as signed and filed this date.

On its own motion the court GRANTS reconsideration of its ruling of March 3, 2006 in which it sustained the distributor defendants' demurrer to plaintiffs' cause of action for strict liability--failure to warn. Upon reconsideration, the demurrer is OVERRULED.

Counsel James G. O'Callahan is ordered to serve a copy of the court's ruling on all parties.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of 5-16-2006 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Page    1 of    2    DEPT. 324

MINUTES ENTERED
05/16/06
COUNTY CLERK

EXHIBIT 3
-38-

Case 4:08-cv-03394-WDB    Document 11-2    Filed 08/11/2008    Page 4 of 15
05/23/2006 10:46 FAX 2134811554        GIRARDI & KEESE                                    @004
        Case 3:07-cv-06328-MHP    Document 5-2    Filed 12/14/2007    Page 3 of 14

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 05/16/06 | | DEPT. 324 |
| HONORABLE VICTORIA CHANEY | JUDGE | E. SABALBURO    DEPUTY CLERK |
| HONORABLE #7 | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| F. ROJAS, C.A. | Deputy Sheriff | NONE    Reporter |

| | | |
|---|---|---|
| JCCP4247 | Plaintiff Counsel | |
| COORDINATION PROCEEDING SPECIAL TITLE RULE (1550 (b)) | Defendant Counsel | |
| VIOXX Cases | | |
| | NO APPEARANCES | |

**NATURE OF PROCEEDINGS:**

Date: 5-16-2006

John A. Clarke, Executive Officer/Clerk

By: _____
           E. Sabalburo

James G. O'Callahan
GIRARDI KEESE
1126 Wilshire Blvd.
Los Angeles, CA 90017

Page    2 of    2    DEPT. 324

```
MINUTES ENTERED
05/16/06
COUNTY CLERK
```

EXHIBIT 3
-39-

MAY 17 2006

GIRARDI & KEESE

**FILED**

SUPERIOR COURT OF CALIFORNIA LOS ANGELES SUPERIOR COURT

COUNTY OF LOS ANGELES       MAY 16 2006

JOHN A. CLARKE, CLERK

BY E. SABALBURO, DEPUTY

|  |  |
|---|---|
| IN RE VIOXX CASES | CASE NO. JCCP 4247 |
|  | REVISED RULING ON REQUEST FOR |
|  | RECONSIDERATION |

Hearing date:     4/11/06

Ruling date:      5/16/06

After considering the moving, opposition and reply papers and the arguments of
counsel at the hearing, the court now rules as follows:

**On its own motion the court GRANTS reconsideration of its ruling of March
3, 2006 in which it sustained the distributor defendants' demurrer to plaintiffs'
cause of action for strict liability—failure to warn. Upon reconsideration, the
demurrer is OVERRULED.**

## I.    INTRODUCTION

In their first cause of action plaintiffs allege strict liability—failure to warn—
against "Pharmaceutical Distributor Does 101 to 200." (Compl., p. 13.)  In sustaining the
distributor defendants' demurrer to this cause of action the court on March 3, 2006 ruled
that

Pharmacists cannot be held strictly liable for defects in prescription
pharmaceuticals or for failure to warn of such defects. (*Murphy v. E.R. Squibb &*

-1-

EXHIBIT 3
-40-

05/23/2006 10:47 FAX 2134811554          GIRARDI & KEESE                    @006

Case 4:08-cv-03394-WDB    Document 11-2    Filed 08/11/2008    Page 6 of 15
Case 3:07-cv-06328-MHP    Document 5-2    Filed 12/14/2007    Page 5 of 14

1   *Sons, Inc.* (1985) 40 Cal.3d 672 [pharmacists not strictly liable because they have

2   no discretion to depart from a valid prescription, and strict liability would raise the

3   price of prescription drugs, which is against public policy].) Neither can

    manufacturers. (*Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1060-1061 [no

4   strict liability against pharmaceutical manufacturers].) [¶] It would be an

5   anomalous to hold a distributor, who stands between the manufacturer and

    pharmacist in the chain of distribution, to a different standard.

6

7       At a status conference on April 11, 2006, plaintiffs requested that the court sua

8   sponte reconsider the above in light of *Carlin v. Superior Court* (1996) 13 Cal. 4th 1104

9   (*Carlin*), a case they did not cite in their opposition to the demurrer. In opposition, the

10  distributor defendants argued, as they argued in their demurrer, that exemption of

11  distributors of prescription drugs from the doctrine of strict liability is supported by

12  California case law, public policy, and the Restatement (Third) of Torts.

13      The court agreed to reconsider the matter, and now reverses its earlier ruling.

14

15  **II.    DISCUSSION**

16

17  **A.    Reconsideration**

18

19      A court may, on its own motion, reconsider its interim rulings. (*Le Francois v.*

20  *Goel* (2005) 35 Cal.4th 1094.) A court may also take under advisement a party's request

21  that it reconsider a ruling. (*Id.* at p. 1108.)

22

23  **B.    Strict Liability**

24

25      The parties well know the law of strict liability. A manufacturer may be held

26  strictly liable for injuries caused by a defective product that it knew would not be

27  inspected by the consumer for defects. (*Greenman v. Yuba Power Products, Inc.* (1963)

28  59 Cal.2d 57.) This is so because a "manufacturer, unlike the public, can anticipate or

    guard against the recurrence of hazards, [] the cost of injury may be an overwhelming

-2-

EXHIBIT 3
-41-

1   misfortune to the person injured whereas the manufacturer can insure against the risk and

2   distribute the cost among the consuming public, and [] it is in the public interest to

3   discourage the marketing of defective products." (*Brown v. Superior Court*, *supra*, 44

4   Cal.3d at p. 1056 (*Brown*).)  Strict liability also applies to retailers (*Vandermark v. Ford*

5   *Motor Co.* (1964) 61 Cal.2d 256) but not to "'those who sell their services for the

6   guidance of others . . . .'" (*Murphy v. E.R. Squibb & Sons, Inc.*, *supra*, 40 Cal.3d at p. 677

7   (*Murphy*), quoting *Gagne v. Bertran* (1954) 43 Cal.2d 481, 487).

8           There are three types of product defects for which a manufacturer and distributor

9   may be held liable:  Manufacturing defects, design defects, and deficient warnings or

10  instructions. (*Brown*, *supra*, at p. 1057.)  Though strong policy considerations—

11  protection of consumers and distribution of the cost of injury—support the doctrine of

12  strict liability generally, other policy considerations—including the "public interest in the

13  availability of drugs at an affordable price" (*Brown*, *supra*, at p. 1063)—militate against

14  applying the doctrine specifically to prescription drugs.

15          In its March 3 ruling the court identified two boundaries in the chain of

16  distribution—the drug manufacturer and the ultimate retailer—where, for policy reasons,

17  the courts have held strict liability not to apply.  The court then reasoned that if strict

18  liability does not apply at the book-ends of distribution, it doesn't apply in the middle.

19  As will be discussed below, the court misapprehended the case law's treatment of the

20  book-ends.

21

22  C.    **California Case Law**

23

24          In its March 3 ruling, *supra*, the court overstated the rule of *Brown* and failed to

25  limit *Murphy* to its rationale.

26          In *Brown*, the court considered whether a manufacturer of prescription drugs

27  could, like other manufacturers, be held strictly liable for injuries caused by its products.

28  After discussing various policy considerations the court held prescription drugs should be

treated differently from other products.  However, *Brown* did not, as this court stated,

EXHIBIT 3
-42-

1  hold that manufacturers of prescription drugs are exempt from strict liability altogether; it

2  held only that they may not be held strictly liable for injuries caused by design defects in

3  their products (*id.* at p. 1065) or by failure to warn of unknowable risks (*id.* at p. 1066.)

4  *Brown* held drug manufacturers *could* be held strictly liable for injuries caused by failure

5  to warn of known or reasonably scientifically knowable risks. (*Id.* at p. 1069.)

6        Thus falls one of the book-ends relied upon by this court in its March 3 ruling, for

7  plaintiff alleges the distributor defendants are subject to liability in the same wise as were

8  the manufacturer defendants in *Brown*—liability for failure to warn of risks about which

9  they knew or reasonably should have known.

10        The other book-end was *Murphy*. There, the court held pharmacists cannot be

11  held strictly liable for defects in prescription pharmaceuticals or for failure to warn of

12  such defects. (*Id.* at p. 681.) Defendants liken themselves to pharmacists and argue

13  *Murphy* exempts them, too, from strict liability.

14        In *Murphy*, the plaintiff asserted that a pharmacy that sells prescription drugs "is in

15  the same position as a retailer of any other consumer product, and that the reasons

16  advanced in *Greenman* and *Vandermark* for imposing strict liability necessarily apply to

17  a pharmacy." (*Murphy*, at p. 676.) The court disagreed, ultimately affirming the trial

18  court's granting of a pharmacy defendant's motion for judgment on the pleadings. (*Id.* at

19  p. 681.)

20        To understand why it did so requires close reading. First, the court noted "[i]t is

21  critical to the issue posed to determine if the dominant role of a pharmacist in supplying a

22  prescription drug should be characterized as the performance of a service or the sale of a

23  product." (*Id.* at p. 677.) "'[T]hose who sell their services for the guidance of others . . .

24  are not liable in the absence of negligence or intentional misconduct.'" (*Ibid.*, citation

25  omitted.) The court surveyed case law, amicus briefs, and the Business and Professions

26  and Health and Safety Codes, ultimately finding that while a "pharmacist is engaged in a

27  hybrid enterprise, combining the performance of services and the sale of prescription

28  drugs" (*id.* at p. 678), "[t]he Legislature must have intended . . . that even though a

EXHIBIT 3
-43-

Case 4:08-cv-03394-WDB    Document 11-2    Filed 08/11/2008    Page 9 of 15
05/23/2006 10:50 FAX 2134811554        GIRARDI & KEESE                        @005
Case 3:07-cv-06328-MHP    Document 5-2    Filed 12/14/2007    Page 8 of 14

1  pharmacist is paid for the medication he dispenses, his conduct in filling a prescription is

2  to be deemed a service, and . . . is immune from strict liability" (*id.* at p. 680).

3      Thus falls the second book-end relied upon by this court in its March 3 ruling, for

4  the distributor defendants cannot argue their business is, like a pharmacist, to provide a

5  service. They are thus in a position different from that of the pharmacy in *Murphy* and

6  cannot apply its holding to them.

7      The final case on point is *Carlin, supra.* There, after an extensive policy

8  discussion the supreme court affirmed its earlier ruling in *Brown:* A manufacturer of

9  prescription drugs "should bear the costs, in terms of preventable injury or death, of its

10  own failure to provide adequate warnings of known or reasonably scientifically knowable

11  risks." (*Id.* at p. 1117.)

12      No California case law supports defendants' argument that distributors of

13  prescription drugs should not be held strictly liable for injuries caused by their failure to

14  warn of known or reasonably scientifically knowable risks. The only law nearly on point

15  is to the contrary: In general, the strict liability doctrine applies to those in the chain of

16  distribution. (See *Vandermark v. Ford Motor Co., supra,* 61 Cal.2d at pp. 262-263

17  ["Retailers like manufacturers . . . . are an integral part of the overall producing and

18  marketing enterprise that should bear the cost of injuries resulting from defective

19  products."].)

20

21  **D.    Public Policy**

22

23      There being no California case law on point, the distributor defendants argue the

24  public policy considerations discussed and acknowledged in *Brown, Murphy* and *Carlin*

25  require that distributors of prescription drugs not be held strictly liable for injuries caused

26  by their failure to warn of known or reasonably scientifically knowable risks.

27      For the court's present purpose, the important point to take away from *Brown* and

28  *Carlin* is that while for policy reasons prescription drugs are treated differently from

other products, those reasons are not compelling enough to exempt drug manufacturers

EXHIBIT 3
-44-

1    from strict liability altogether.  And policy considerations were not the basis of *Murphy's*

2    holding at all.  (After holding that pharmacies provide a service when they dispense

3    prescription drugs, the court speculated as to why "[t]he Legislature may have

4    determined that it is not in the public interest to subject [pharmacies] to strict liability,"

5    (*Murphy*, at p. 680), discussing various possible policy considerations the Legislature

6    could have relied upon.  However, those policy considerations were discussed only

7    insofar as they supported the Legislature's action, not the court's holding, which merely

8    relied upon the Legislature's action.)  There is therefore no California authority for

9    defendants' proposition that public policy requires that distributors of prescription drugs

10   be treated differently from distributors of other products for purposes of strict liability.

11

12   **E.    Restatement**

13

14          Finally, defendants argue the Third Restatement of Torts holds distributors may be

15   held liable only for negligence.

16          At issue is section 6, subdivision (e), Products Liability:

17          A retail seller or other distributor of a prescription drug or medical device is
             subject to liability for harm caused by the drug or device if:  [¶]  (1) at the time of

18           sale or other distribution the drug or medical device contains a manufacturing
             defect . . . ; or [¶] (2) at or before the time of sale or other distribution of the drug

19           or medical device the retail seller or other distributor *fails to exercise reasonable*

20           *care* and such failure causes harm to persons.

21

22   (Rest.3d Torts, Products Liability, § 6, subd. (e), emphasis added.)

23          Missing from this description is the word "only".—though the rule states that a

24   distributor of as prescription drug may be held liable for injuries caused by its failure to

25   exercise reasonable care, it does not state that is the only circumstance in which a

26   distributor may be held liable.  But that is what it means, as evidenced by comment h:

27

28          The rule governing most products imposes liability on wholesalers and retailers
             for selling a defectively designed product, or one without adequate instructions or
             warnings, even though they have exercised reasonable care in marketing the

EXHIBIT 3
-45-

Case 4:08-cv-03394-WDB    Document 11-2    Filed 08/11/2008    Page 11 of 15
05/23/2006 10:52 FAX 2134811554        GIRARDI & KEESE                              @011
Case 3:07-cv-06328-MHP    Document 5-2    Filed 12/14/2007    Page 10 of 14

product. [Citations.] Courts have refused to apply this general rule to nonmanufacturing retail sellers of prescription drugs and medical devices and, instead, have adopted the rule stated in Subsection (e). That rule subjects retailers to liability *only* if the product contains a manufacturing defect or if the retailer fails to exercise reasonable care in connection with distribution of the drug or medical device. In so limiting the liability of intermediary parties, courts have held that they should be permitted to rely on the special expertise of manufacturers, prescribing and treating health-care providers, and governmental regulatory agencies. They have also emphasized the needs of medical patients to have ready access to prescription drugs at reasonable prices.

(Rest.3d Torts, Products Liability, § 6, subd. (e), com. h, emphasis added.)

As discussed above, though California cases discuss policy considerations attendant upon the manufacture and distribution of prescription drugs, none has found those considerations to require that actors in the chain of distribution be exempt from strict liability altogether. (Though in *Murphy* a pharmacy was exempted from strict liability, it was because a pharmacy provides a service, not because public policy requires the exemption.)

The cases considered by The American Law Institute are no different. The court will survey them:

*Elsroth v. Johnson & Johnson* (S.D.N.Y. 1988) 700 F.Supp. 151 held a manufacturer and retailer cannot be liable in damages for the criminal conduct of unknown third party who tampered with the manufacturer's product post-distribution.

*Jones v. Irvin* (S.D.Ill. 1985) 602 F.Supp. 399 held a pharmacist had no duty to warn a customer that a drug is being prescribed in dangerous amounts, that the customer is being over medicated, or that various drugs in their prescribed quantities could cause adverse reactions.

*Murphy, supra*, held a pharmacy cannot be held strictly liable because in dispensing prescription medications it predominantly provides a service, as opposed to effecting a sale.

*Leesley v. West* (Ill.App.Ct. 1988) 518 N.E.2d 758 held that under the learned intermediary doctrine a drug manufacturer has a duty to warn only prescribing doctors of

EXHIBIT 3
-46-

Case 4:08-cv-03394-WDB    Document 11-2    Filed 08/11/2008    Page 12 of 15
05/23/2006 10:54 FAX 2134811554    GIRARDI & KEESE    @012
Case 3:07-cv-06328-MHP    Document 5-2    Filed 12/14/2007    Page 11 of 14

1   the inherent dangers of the drug, not consumers directly, and that a pharmacist should be

2   held to no greater duty than a manufacturer.

3       *Lemire v. Garrard Drugs* (Mich.Ct.App. 1980) 291 N.W.2d 103 held a successor

4   drug store could not be held liable for injuries caused by the predecessor drug store's

5   filling a doctor's prescription.

6       *Parker v. St. Vincent Hosp.* (N.M.App. 1996) 919 P.2d 1104 held public policy

7   favored not imposing strict liability on hospitals for supplying a *defectively designed*

8   implant selected by a physician.  The court reversed the grant of summary judgment on

9   plaintiff's negligence claim, holding the hospital may have a duty to investigate the safety

10  of the implants before supplying them.

11      *Batiste v. American Home Products Corp.* (N.C.Ct.App. 1977) 231 S.E.2d 269

12  noted that under North Carolina law the doctrine of strict liability does not apply to

13  retailers (*id.* at p. 275) and held a druggist is not strictly liable for providing a drug

14  ordered by a physician (*id.* at pp. 275-276).

15      *Coyle v. Richardson-Merrell, Inc.* (Pa. 1991) 584 A.2d 1383 held that public

16  policy requires that a pharmacist not be held strictly liable damages caused because by

17  the pharmacist's failure to provide warnings of the risks of a drug to a patient/consumer.

18  (This case goes one step beyond *Murphy, supra,* but still does not extend the rule to

19  defendant distributors.)

20      *Makripodis v. Merrell-Dow Pharmaceuticals., Inc.* (Pa.Super.Ct. 1987) 523 A.2d

21  374 is to the same effect as *Coyle v. Richardson-Merrell, supra.*

22      *Pittman v. Upjohn Co.* (Tenn. 1994) 890 S.W.2d 425 held a manufacturer and a

23  prescribing physician had only a duty to use reasonable care in giving warnings about an

24  unavoidably dangerous drug.

25      In sum, none of the cases relied upon by the American Law Institute in

26  formulating section 6, subdivision (3) of the Restatement supports the proposition that

27  distributors of prescription drugs (other than pharmacists) should be exempt from strict

28  liability for failure to warn of known or reasonably knowable risks.

-3-

EXHIBIT 3
-47-

Case 4:08-cv-03394-WDB    Document 11-2    Filed 08/11/2008    Page 12 of 15
05/23/2006 10:55 FAX 2134811554    GIRARDI & KEESE    ☒013
Case 3:07-cv-06328-MHP    Document 5-2    Filed 12/14/2007    Page 12 of 14

**F.      Question of First Impression**

Though no California case, no recitation of public policy found in California case law, and no case supporting the Third Restatement of Torts supports the proposition that an exception to the strict liability doctrine should be made for distributors of prescription drugs, no authority prohibits such an exception either, and the proposition that there should be one has its appeal.  Some of the policy considerations applicable to pharmacists may apply to distributors:

> [T]he wide availability of a full range of prescription drugs at economical cost [may] outweigh[] the advantage to the individual consumer of being able to recover for injuries on a strict liability basis rather than to be limited to claims arising from negligence.
>
> If [distributors] were held strictly liable for the drugs they [distribute], some of them, to avoid liability, might restrict availability by refusing to [distribute] drugs which pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients.  Furthermore, in order to assure that a [distributor] receives the maximum protection in the event of suit for defects in a drug, the [distributor] may select the more expensive product made by an established manufacturer when he has a choice of several brands of the same drug. . . .  "Why choose a new company's inexpensive product, which has received excellent reviews in the literature for its quality, over the more expensive product of an established multinational corporation which will certainly have assets available for purpose of indemnification 10, 20, or 30 years down the line?" [Citation omitted.]
>
> [S]ince the doctor who ordered the drug provided by the [distributor] cannot be held strictly liable for its defects and in some circumstances the manufacturer who created the defect can also escape liability, it would be unfair and burdensome to expose the [distributor] alone to strict liability . . . .

(*Murphy*, *supra*, at pp. 680-681.)

But these considerations are speculative, and the court, being aware of no judicial conclusion on them, will leave their resolution to the Legislature.

Finally, the distributor defendants argue that a distributor who neither created nor tested a drug "has no connection with physicians, certainly knows far less about the drug than does the manufacturer, [] is in no position to independently test or analyze a drug

EXHIBIT 3
-48-

Case 4:08-cv-03394-WDB   Document 11-2   Filed 08/11/2008   Page 14 of 15
05/23/2006 10:56 FAX 2134811554        GIRARDI & KEESE                           ⁂014
Case 3:07-cv-06328-MHP   Document 5-2   Filed 12/14/2007   Page 13 of 14

1  and/or its labeling," and is "not privy to proprietary and non-public information known to

2  the manufacturers", and therefore cannot reasonably be held strictly liable for failure to

3  warn. (Opp., p. 7.)

4     This argument, too, has its appeal. But the same can be said of distributors of

5  many products, and with respect to them public policy is well established:

6     [T]the seller, by marketing his product for use and consumption, has undertaken
      and assumed a special responsibility toward any member of the consuming public
7     who may be injured by it; [] the public has the right to and does expect, in the case
      of products which it needs and for which it is forced to rely upon the seller, that
8     reputable sellers will stand behind their goods; [] public policy demands that the
      burden of accidental injuries caused by products intended for consumption be
9     placed on those who market them, and be treated as a cost of production against
      which liability insurance can be obtained; and [] the consumer of such products is
10    entitled to the maximum of protection at the hands of someone, and the proper
      persons to afford it are those who market the products.
11

12
13  (Rest.2d Torts, § 402A, com. c.)

14     Defendants point to no authority that makes an exception to the doctrine of strict

15  liability for distributors in an industry analogous to the prescription pharmaceutical

16  industry. This court will not be the first to make such an exception at the pleading stage.

17

18  **In sum:**

19     **On its own motion the court GRANTS reconsideration of its ruling of March**

20  **3, 2006 in which it sustained the distributor defendants' demurrer to plaintiffs'**

21  **cause of action for strict liability—failure to warn. Upon reconsideration, the**

22  **demurrer is OVERRULED.**

23

24  IT IS SO ORDERED.
    Dated: 5/16/06
25

26

27                                          Victoria Gerrard Chaney

28                                                  Judge

EXHIBIT 3
-49-

Case 4:08-cv-03394-WDB    Document 11-2    Filed 08/11/2008    Page 15 of 15
05/23/2006 10:57 FAX 2134811554          GIRARDI & KEESE                    ☒015
          Case 3:07-cv-06328-MHP    Document 5-2    Filed 12/14/2007    Page 14 of 14

1

## ELECTRONIC PROOF OF SERVICE

2

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4

5
    I am employed in the County of Los Angeles, State of California.  I am over the age of 18

6
and not a party to the within action; my business address is 1126 Wilshire Boulevard, Los

7
Angeles, California  90017.

8
    On May 23, 2006, pursuant to the Court's Electronic Case Management Order (CMO No.

9
1),

10
    [ ]    I submitted an electronic version of the following document via file transfer protocol

11
to CaseHomePage.

12
    [X]    I submitted a hard copy of the following document to CaseHomePage by facsimile.

13
    [ ]    I submitted an electronic version of the document via file transfer protocol and a

14
hard copy of the exhibits via facsimile to CaseHome Page.

15
    Notice of Ruling

16
    Executed on May 23, 2006, at Los Angeles, California.

17
    I declare under penalty of perjury under the laws of the State of California that the above

18
is true and correct.

19

20
                            Colleen Tesman

21

22

23

24

25

26

27

28

# EXHIBIT B



Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only ___

FILED
CLERK, U.S. DISTRICT COURT

03-26-02

MAR 26 2002

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

Docketed
Copies / NTC Sent
JS - 5 / JS - 6
JS - 2 / JS - 3
CLSD

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

BC-254630 LACNTY

SHARON REID, as an individual, on
behalf of herself and all others
similarly situated; MYRON CARUSO,
as an individual,

    Plaintiffs,

    v.

MERCK & COMPANY, INC., a
corporation, et al.,

    Defendants.

CASE NO. CV 02-00504 NM (RZx)

ORDER GRANTING PLAINTIFFS'
MOTION TO REMAND

ENTERED
CLERK, U.S. DISTRICT COURT

03-27-02

MAR 27 2002

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

## I. INTRODUCTION

On July 23, 2001 plaintiffs Sharon Reid and Myron Caruso filed a
complaint in Los Angeles Superior Court against defendants Merck & Company,
Inc. ("Merck"), Century Beverly Hills Pharmacy, Neighbor Care Pharmacy, Good
Samaritan Medical Pharmacy (collectively, "the pharmacy Defendants"), and
various doe defendants, asserting claims for strict liability, negligence, breach of
express and implied warranty, deceit by concealment, negligent misrepresentation,
and violation of California Business and Professions Code sections 17200 and
17500.  On January 17, 2002 Merck removed the case under 28 U.S.C. § 1441(b)
based on diversity, asserting that the non-diverse pharmacy Defendants were
fraudulently joined.  See Notice of Removal at 4.

Now pending before the court is Plaintiffs' motion to remand.

EXHIBIT 4
-51-

## II. RELEVANT FACTUAL BACKGROUND

1    Plaintiffs are individuals who have been prescribed and supplied with the

2    prescription drug "Vioxx," and, as a consequence of ingesting the same, allegedly

3    have suffered "dangerous, severe and life-threatening side effects," including

4    edema, changes in blood pressure, and cardiovascular problems. Compl. ¶ 1.

5    Plaintiffs allege that Defendants have aggressively marketed and sold Vioxx as an

6    effective pain reliever, while purposefully downplaying and understating the

7    drug's known health hazards and risks. See Compl. ¶¶ 23, 28, 31.

8

9

## III. DISCUSSION

### A. Legal Standard

10    For removal to be valid based on diversity, 28 U.S.C. § 1332 requires

11    complete diversity of citizenship; each of the plaintiffs must be a citizen of a

12    different state than each of the defendants. Morris v. Princess Cruises, Inc., 236

13    F.3d 1061, 1067 (9th Cir. 2001). However, one exception to the requirement of

14    complete diversity is when a non-diverse defendant has been "fraudulently joined"

15    for the purpose of defeating diversity jurisdiction. See id. "Fraudulent joinder" is

16    a term of art and does not impugn the integrity of plaintiffs or their counsel and

17    does not refer to an intent to deceive. See id.; see also DaCosta v. Novartis AG,

18    180 F. Supp. 2d 1178, 1181 (D. Or. 2001). "Joinder of a non-diverse defendant is

19    deemed fraudulent, and the defendant's presence in the lawsuit is ignored for

20    purposes of determining diversity, if the plaintiff fails to state a cause of action

21    against a resident defendant, and the failure is obvious according to the settled

22    rules of the state." Morris, 236 F.3d at 1067 (internal quotation marks omitted).

23    A defendant seeking removal to federal court "is entitled to present the facts

24    showing the joinder to be fraudulent." McCabe v. General Foods Corp., 811 F.2d

25    1336, 1339 (9th Cir. 1987). To resolve fraudulent joinder claims, the court may

26    look beyond the pleadings and consider evidence similar to that offered in

EXHIBIT 4
-52-

1    summary judgment proceedings, such as affidavits and deposition testimony.

2    DaCosta, 187 F. Supp. 2d at 1181.

3         There is a presumption against finding fraudulent joinder, and defendants

4    asserting that plaintiff has fraudulently joined a party carry a heavy burden of

5    persuasion. Plute v. Roadway Package System, 141 F. Supp. 2d 1005, 1008 (N.D.

6    Cal. 2001); see also Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709,

7    712 n.3 (9th Cir. 1990). Courts have denied claims of fraudulent joinder when

8    there is any possibility that a plaintiff may prevail on the cause of action against

9    the in-state defendant. Plute, 141 F. Supp. 2d at 1008; see also Cavallini v. State

10   Farm Mut. Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995) ("The removing party

11   must prove that there is absolutely no possibility that the plaintiff will be able to

12   establish a cause of action against the in-state defendant in state court.") (internal

13   quotation marks omitted). "In determining whether a defendant was joined

14   fraudulently, the court must resolve 'all disputed questions of fact and all

15   ambiguities in the controlling state law in favor of the non-removing party.'"

16   Plute, 141 F. Supp. 2d at 1008 (quoting Dodson v. Spiliada Maritime Corp., 951

17   F.2d 40, 42-43 (5th Cir. 1992)). Furthermore, any doubts concerning the

18   sufficiency of a cause of action due to inartful, ambiguous or technically defective

19   pleading must be resolved in favor of remand, and a lack of clear precedent does

20   not render the joinder fraudulent. Plute, 141 F. Supp. 2d at 1008; see also

21   Archuleta v. Am. Airlines, Inc., 2000 WL 656808, at *4 (C.D. Cal. 2000) (citing

22   Gaus v. Miles, Inc., 980 F.2d 565, 566-67 (9th Cir. 1992)).

23

24                              B. Application

25        Plaintiffs argue removal was improper and remand is necessary because

26   complete diversity of citizenship does not exist. Merck contends that the

27   pharmacy Defendants were fraudulently joined for the sole purpose of defeating

28   diversity of citizenship, and that, consequently, the pharmacy Defendants must be

                                         3

EXHIBIT 4
-53-

1  ignored for diversity jurisdiction purposes.

2       It is undisputed that Plaintiffs are residents of California.  As Merck

3  produces uncontradicted extrinsic evidence to show that Neighbor Care Pharmacy

4  is not a California resident, and as the complaint alleges no causes of action

5  against Good Samaritan Medical Pharmacy, the court addresses only whether

6  Century Beverly Hills Pharmacy, undisputedly a California resident, was

7  fraudulently joined.  See Isetti Decl. ¶ 3 (Neighbor Care is Delaware corporation

8  with principal place of business in Pennsylvania); see also Bond Decl. ¶ 3

9  (Neighbor Care's office in Cerritos, California, does not sell drugs to, or otherwise

10  interface with, patients).

11       Plaintiffs assert four causes of action against Century Beverly Hills

12  Pharmacy: negligence, deceit by concealment, violation of California Business &

13  Professions Code 17200, and violation of California Business & Professions Code

14  17500.[1]  To prove fraudulent joinder, Merck must establish that settled California

15  law precludes these causes of action against Century Beverly Hills Pharmacy.  In

16  its opposition, Merck argues that each of these causes of action is premised upon a

17  duty to warn, and that jurisdictions from across the country have rejected

18  imposition of such a duty on pharmacists pursuant to the "learned intermediary"

19  doctrine.  See Opp. at 9-10.  Merck urges this court to follow the reasoning set

20  forth in various non-binding cases by rejecting such a duty here, and sets forth

21  various policy arguments in support of its position.  See Opp. at 10-13.

22       However, Merck concedes that "California courts have not yet decided the

23  specific issue of whether the learned intermediary doctrine precludes the

24

25      [1] Plaintiffs also assert a cause of action for "strict liability - failure to warn" against

26  Century Beverly Hills Pharmacy. See Compl. ¶¶ 34-37.  However, in their moving

27  papers, Plaintiffs concede that pursuant to Murphy v. E.R. Squibb & Sons, Inc., 40 Cal.
3d 672 (1985), pharmacists are not subject to strict liability. See Mot. at 9.  Accordingly,

28  the court does not consider this cause of action for purposes of the motion to remand.

EXHIBIT 4
-54-

1   imposition of a duty to warn on pharmacists . . . ." <u>See</u> Opp. at 10.  Indeed, in

2   1985 the California Supreme Court left open the question whether a pharmacist

3   may be held negligent for alleged defects in a product.  <u>See</u> <u>Murphy v. E. R.</u>

4   <u>Squibb & Sons, Inc.</u>, 40 Cal. 3d 672, 675 (1985) ("We will decide whether a

5   pharmacy at which the drug was purchased may be held strictly liable for alleged

6   defects in the product (as distinguished from ordinary negligence) . . . .")

7   (parenthetical in original).  Other California cases suggest that as service

8   providers, pharmacists may be held liable under negligence theories.  <u>See, e.g.,</u>

9   <u>Gagne v. Bertran</u>, 43 Cal. 2d 481, 489 (1954) ("The services of experts are sought

10  because of their special skill.  They have a duty to exercise the ordinary skill and

11  competence of members of their profession, and a failure to discharge that duty

12  will subject them to liability for negligence."); <u>see also</u> <u>Pierson v. Sharp Mem'l</u>

13  <u>Hosp.</u>, 216 Cal. App. 3d 340, 345 (1989) (defining pharmacists as service

14  providers); <u>Murphy</u>, 40 Cal.3d at 676 ("those who sell their services for the

15  guidance of others . . . are not liable in the absence of negligence or intentional

16  misconduct.") (internal quotation marks omitted).

17       In the absence of binding California authority establishing that pharmacies

18  may not be held liable for violation of a "duty to warn," the court cannot rule as a

19  matter of law that there is "absolutely no possibility" Plaintiffs could prevail on

20  their causes of action against Century Beverly Hills Pharmacy.  <u>See</u> <u>Cavallini</u>, 44

21  F.3d at 259; <u>Plute</u>, 141 F. Supp. 2d at 1012 (in absence of binding California law

22  establishing that plaintiff could not prevail on retaliation claims against defendant

23  supervisors, defendant did not meet its burden of showing that supervisors were

24  fraudulently joined).  Consequently, Merck does not meet its heavy burden of

25  demonstrating that Century Beverly Hills Pharmacy was fraudulently joined, and

26  the matter must be remanded because complete diversity of citizenship is lacking.

27  <u>See</u> <u>Plute</u>, 141 F. Supp. 2d at 1011 ("FedEx's policy-based and statutory

28  construction arguments demonstrate that FedEx cannot meet the standard for

5

**EXHIBIT 4**
-55-

1   fraudulent joinder: FedEx has not demonstrated that *settled* California law

2   precludes Plute from suing his former supervisors for retaliation.") (emphasis in

3   original).

4         Merck also argues the complaint does not attribute wrongdoing to the

5   particular defendant pharmacies, and that the conclusory allegations are

6   insufficient to destroy diversity. See Opp. at 18-19. As stated above, any doubts

7   concerning the sufficiency of a cause of action due to inartful, ambiguous or

8   technically defective pleading must be resolved in favor of remand. Plute, 141 F.

9   Supp. 2d at 1008. In the complaint Plaintiffs allege that the pharmacy Defendants

10  "were engaged in the business of prescribing, formulating, distributing, supplying

11  and selling Vioxx." Compl. ¶ 11. Plaintiffs further allege that "Defendants and

12  each of them purposefully downplayed and understated the health hazards and

13  risks associated with Vioxx," that Defendants "intentionally concealed and

14  suppressed the true facts concerning said pharmaceutical products with the intent

15  to defraud Plaintiffs, in that Defendants knew that . . . Plaintiffs would not have

16  used the subject products, if they were aware of the true facts concerning the

17  dangers of said product. Compl ¶ ¶ 31, 62; see also id. ¶ 74c (Defendants

18  "purposely downplay[ed] and understat[ed] the health hazards and risks associated

19  with Vioxx"); id. ¶ 76 ("Defendants have been unjustly enriched by receipt of

20  hundreds of millions of dollars in ill-gotten gains from the sale and prescription of

21  said drugs in California, sold in large part as a result of the acts and omissions

22  described herein."). Given the liberal pleading requirements, the general

23  allegations against "Defendants" are sufficient to charge the pharmacy Defendants

24  with the alleged wrongful conduct. See Plute, 141 F. Supp. 2d at 1010 n.4; see

25  also Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994)

26  (courts must interpret general allegations to "embrace whatever specific facts

27  might be necessary to support them."); see also Archuleta, 2000 WL 656808, at *9

28  ("The court's task on the present motion [to remand] is not to evaluate whether the

6

EXHIBIT 4
-56-

1   acts of [defendants] were sufficiently pervasive that [plaintiff] will prevail on his

2   harassment claim.  Rather, it is to determine whether he has so obviously failed to

3   state a claim under California law that his joinder of the two defendants is

4   fraudulent for jurisdictional purposes.").  In light of the above, Merck's additional

5   argument that Plaintiffs' fraud claim lacks the requisite specificity in pleading

6   would be better addressed to the state court.

7

8                                 IV.  CONCLUSION

9       For the reasons set forth above, the court <u>grants</u> Plaintiffs' motion to remand

10  this action to the Los Angeles Superior Court.

11

12

13

14  DATED: March 25, 2002

15

16                                        _____

17                                        Nora M. Manella
                                          United States District Judge

18

19

20

21

22

23

24

25

26

27

28

7

EXHIBIT 4
-57-

# EXHIBIT C



1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   TIMOTHY BLACK, et. al.,              CASE NO. CV 03-8730 NM (AJWx)

11

12        Plaintiffs,                     ORDER GRANTING PLAINTIFFS'
                                          MOTION TO REMAND
13

14        v.

15   MERCK & COMPANY, INC., a
     corporation; MCKESSON
16   CORPORATION, a corporation; and
     DOES 1-100, inclusive,
17

18        Defendants.

19

20                         I. INTRODUCTION

21        On November 25, 2003, 35 plaintiffs residing in 20 states, including

22   California but not including New Jersey ("Plaintiffs"), sued Merck & Company,

23   Inc. ("Merck"), McKesson Corporation ("McKesson"), and Does 1-100, inclusive

24   (collectively, "Defendants"), in Los Angeles Superior Court.[1]  Thirty-two of the

25   Plaintiffs allege they were injured by taking VIOXX, a prescription drug; the

26

27

28
     ─────────────────
        [1] Local Rule 19-1 provides that "[n]o complaint or petition shall be filed that
     includes more than ten (10) Doe or fictitiously named parties."

24

EXHIBIT 5

1   remaining three plaintiffs allege loss of consortium. Compl. ¶¶ 13-47.[2]

2       On December 1, 2003, Merck removed the case based on diversity. Merck

3   is incorporated in and has its principal place of business in New Jersey. Id. ¶ 49.

4   McKesson is incorporated in Delaware and has its principal place of business in

5   California. Notice of Removal ¶ 12; Mot. at 1. Merck asserts that diversity

6   jurisdiction exists because the only non-diverse defendant named in the

7   Complaint, McKesson, was fraudulently joined. Notice of Removal ¶ 8; Mot. at 1.

8   In the alternative, Merck argues the court should extend the doctrine of fraudulent

9   joinder to apply where plaintiffs were misjoined. Mot. at 11-12. Merck contends

10  that because the four California plaintiffs were misjoined, the court should

11  disregard their citizenship and sever them from the case. Id. Now pending is

12  Plaintiffs' Motion to Remand on the grounds that: (1) diversity jurisdiction is

13  lacking, and (2) Merck's request to sever the California plaintiffs is contrary to

14  law and to standards of efficiency.

15

16                              II. FACTS

17      Merck, a pharmaceutical company, tested, manufactured, marketed, labeled,

18  and distributed VIOXX. Compl. ¶¶ 48-49. Merck sells VIOXX to wholesale

19  distributors, hospitals, pharmacies, and other suppliers of prescription drugs.

20  Layton Decl. ¶¶ 2-3. McKesson, a wholesale distributor, promoted and distributed

21  VIOXX. Id. ¶ 3; Compl. ¶ 50. Currently, Merck sells VIOXX to approximately

22  33 wholesalers (including McKesson), 1,000 hospitals, 1,500 small pharmacies,

23

24  _____

25      [2] Plaintiffs allege thirteen claims: (1) strict liability for failure to warn;
    (2) negligence; (3) negligence per se; (4) breach of implied warranty; (5) breach of
26  express warranty; (6) deceit by concealment; (7) negligent misrepresentation;
    (8) violation of Cal. Bus. & Prof. Code § 17200; (9) violation of Cal. Bus. & Prof. Code
27  § 17500; (10) violation of Cal. Civ. Code § 1750; (11) wrongful death; (12) survival
28  action; and (13) loss of consortium.

                                    2

EXHIBIT 5

1    and three warehouse chain pharmacies. Layton Decl. ¶ 3.

2        VIOXX is a prescription drug used for the treatment of painful menstrual

3    cramps, the management of acute pain in adults, and the relief of signs and

4    symptoms of osteoarthritis. Compl. ¶ 55. VIOXX has allegedly been linked to

5    several severe and life threatening medical disorders including, but not limited to,

6    edema, changes in blood pressure, heart attacks, strokes, seizures, kidney and liver

7    damage, pregnancy complications, and death. Id. ¶ 58. Plaintiffs allege these

8    risks were not disclosed to them. Id. Plaintiffs further allege Defendants

9    aggressively marketed their product through advertisements and other promotional

10    materials while misleading potential users and failing to protect consumers from

11    serious dangers of which Defendants knew or should have known. Id. ¶¶ 59-64.

12

13                  **III. DISCUSSION**

14             **A. <u>Fraudulent Joinder</u>**

15        For removal based on diversity, 28 U.S.C. § 1332 requires complete

16    diversity of citizenship. <u>Morris v. Princess Cruises, Inc.</u>, 236 F.3d 1061, 1067 (9th

17    Cir. 2001) (citation omitted). Even if the complete diversity requirement is met,

18    removal is not allowed where one of the defendants is a "citizen of the State in

19    which such action is brought." 28 U.S.C. § 1441(b).[3] But if the plaintiff "fails to

20    state a cause of action against a resident defendant, and the failure is obvious

21    according to the settled rules of the state, the joinder of the resident defendant is

22    fraudulent." <u>McCabe v. Gen. Foods Corp.</u>, 811 F.2d 1336, 1339 (9th Cir. 1987)

23    (citation omitted). "Fraudulent joinder" is a term of art and does not impugn the

24    integrity of plaintiffs or their counsel and does not refer to an intent to deceive.

25    <u>Id.</u>; <u>DaCosta v. Novartis AG</u>, 180 F. Supp. 2d 1178, 1181 (D. Or. 2001) (citation

26    _____

27       [3] A corporation is deemed a citizen of its state of incorporation and its principal

28    place of business. <u>See</u> 28 U.S.C. § 1332(c)(1).

3

**EXHIBIT 5**

1  omitted).  Where joinder of a non-diverse defendant is deemed fraudulent, the

2  defendant's presence in the lawsuit is ignored for purposes of determining

3  diversity.  <u>Morris</u>, 236 F.3d at 1067.

4       "There is a presumption against finding fraudulent joinder, and defendants

5  who assert that [the] plaintiff has fraudulently joined a party carry a heavy burden

6  of persuasion."  <u>Plute v. Roadway Package Sys., Inc.</u>, 141 F. Supp. 2d 1005, 1008

7  (N.D. Cal. 2001) (citations omitted); <u>see also</u>, <u>Nishimoto v. Federman-Bachrach &</u>

8  <u>Assocs.</u>, 903 F.2d 709, 712 n. 3 (9th Cir. 1990) ("removal statute is strictly

9  construed against removal jurisdiction"); <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d

10 1190, 1195 (9th Cir. 1988) (same).  Courts have denied claims of fraudulent

11 joinder when there is any possibility that a plaintiff may prevail on the cause of

12 action against the in-state defendant.  <u>Plute</u>, 141 F. Supp. 2d at 1008, 1012; <u>see</u>

13 <u>Cavallini v. State Farm Mut. Auto Ins. Co.</u>, 44 F.3d 256, 259 (5th Cir. 1995) ("The

14 burden of proving a fraudulent joinder is a heavy one.  The removing party must

15 prove that there is absolutely no possibility that the plaintiff will be able to

16 establish a cause of action against the in-state defendant in state court.") (citation

17 and internal quotations omitted).  "In determining whether a defendant was joined

18 fraudulently, the court must resolve 'all disputed questions of fact and all

19 ambiguities in the controlling state law in favor of the non-removing party.'"

20 <u>Plute</u>, 141 F. Supp. 2d at 1008 (quoting <u>Dodson v. Spiliada Maritime Corp.</u>, 951

21 F.2d 40, 42-43 (5th Cir. 1992)); <u>Little v. Purdue Pharma, LP</u>, 227 F. Supp. 2d 838,

22 849 (S.D. Ohio 2002) ("a federal court should hesitate before pronouncing a state

23 claim frivolous, unreasonable, and not even colorable in an area yet untouched by

24 the state courts").

25       Furthermore, any doubts concerning the sufficiency of a cause of action due

26 to inartful, ambiguous, or technically defective pleading must be resolved in favor

27 of remand; a lack of clear precedent does not render the joinder fraudulent.  <u>Plute</u>,

28 141 F. Supp. 2d at 1008 (citation omitted); <u>see Peloza v. Capistrano Unified Sch.</u>

4

EXHIBIT 5

1    Dist., 37 F.3d 517, 521 (9th Cir. 1994) (courts must interpret general allegations to

2    "embrace whatever specific facts might be necessary to support them"); Little, 227

3    F. Supp. 2d at 847 n. 12 ("in light of the heavy burden on defendants to show the

4    non-diverse defendants were fraudulently joined, it seems to this Court that a

5    finding of fraudulent joiner should not be based on factual deficiencies within the

6    pleadings which are correctable by amendment").

7         Merck contends that McKesson was fraudulently joined on two grounds:

8    (1) Plaintiffs have failed to allege an actual connection between their purported

9    injuries and McKesson's conduct, and (2) Plaintiffs have failed to state a viable

10   claim against McKesson.  With respect to the first ground, Merck argues Plaintiffs

11   must allege the VIOXX they ingested was distributed by McKesson to the

12   pharmacies from which Plaintiffs purchased VIOXX.  Opp. at 5-6.  Merck argues

13   that McKesson is one of numerous distributors and Plaintiffs have failed to plead

14   that McKesson received a benefit from the sale of the product, that its role was

15   integral to the business of the manufacturer, or that McKesson had control over or

16   ability to influence the manufacturing or distribution process.  Id. at 7.

17        Plaintiffs, however, allege McKesson "was in the business of promoting and

18   distributing the pharmaceutical Vioxx."  Compl. ¶ 50.  Plaintiffs also allege they

19   have "been prescribed and supplied with, received, and [have] taken and ingested

20   and consumed the prescription drug Vioxx, as . . . distributed, marketed, labeled,

21   promoted, packaged . . . or otherwise placed in the stream of interstate commerce

22   by Defendants Merck & Company, Inc., McKesson, and Defendants Does 1

23   through 100."  Id. ¶ 1.[4]

24

25        [4] Most of the remaining allegations are against "Defendants," including McKesson.

26   General allegations against "Defendants" are sufficient to charge McKesson with the
     alleged wrongful conduct.  See Plute, 141 F. Supp. 2d at 1007, 1010 n. 4 (any doubts

27   concerning the sufficiency of a cause of action due to inartful, ambiguous, or

28   technically defective pleading must be resolved in favor of remand); Peloza, 37 F.3d at

5

EXHIBIT 5

1     Next, Merck contends Plaintiffs have failed to state a viable claim against

2 McKesson. Plaintiffs argue they have stated a claim against McKesson for strict

3 liability for failure to warn. Under California law, manufacturers can be held

4 strictly liable for failure to warn. <u>Brown v. Superior Court</u>, 44 Cal. 3d 1049, 1065

5 (1988). Generally, such liability extends beyond manufacturers to retailers and

6 wholesalers. <u>Johnson v. Standard Brands Paint Co.</u>, 274 Cal. App. 2d 331, 337

7 (1969); <u>Soule v. Gen. Motors Corp.</u>, 8 Cal. 4th 548, 560 (1994). A retailer

8 includes anyone involved in the sale of a product short of "the housewife who, on

9 occasion, sells to her neighbor a jar of jam or a pound of sugar." <u>Pan-Alaska</u>

10 <u>Fisheries, Inc. v. Marine Constr. & Design Co.</u>, 565 F.2d 1129, 1135 (9th Cir.

11 1977) (citations omitted).

12     In contrast to manufacturers of prescription drugs who are subject to strict

13 liability for failure to warn, pharmacists cannot be held strictly liable for failure to

14 warn. <u>See</u> <u>Murphy v. E. R. Squibb & Sons, Inc.</u>, 40 Cal. 3d 672, 679 (1985);

15 <u>Carlin v. Superior Court</u>, 13 Cal. 4th 1104, 1117 (1996). "Courts have

16 traditionally maintained a distinction between those rendering services and those

17 selling products, holding that those providing services are not subject to strict

18 liability[.]" <u>San Diego Hosp. Ass'n v. Superior Court</u>, 30 Cal. App. 4th 8, 13

19 (1994). As the California Supreme Court has explained: "A key factor is that the

20 pharmacist who fills a prescription is in a different position from the ordinary

21 retailer because he cannot offer a prescription for sale except by order of the

22 doctor. . . . [H]e is providing a service to the doctor." <u>Murphy</u>, 40 Cal. 3d at 679.

23     Although California case law has carved out an exception for service

24 providers such as pharmacists, it has not addressed whether distributors of

25 prescription drugs can be strictly liable for failure to warn. Because state law is

26

27 521 (courts must interpret general allegations to "embrace whatever specific facts might

28 be necessary to support them").

6

EXHIBIT 5

1  unsettled as to whether a distributor of prescription drugs could be strictly liable

2  for failure to warn, the court cannot rule that there is "absolutely no possibility"

3  Plaintiffs could prevail on this claim against McKesson. See Plute, 141 F. Supp.

4  2d at 1008, 1012; Cavallini, 44 F.3d at 259. Thus, Merck has not met its "heavy

5  burden" of demonstrating that a non-diverse defendant was fraudulently joined.

6  See Plute, 141 F. Supp. 2d at 1012; Little, 227 F. Supp. 2d at 849.

7       Merck argues the rationale for exempting pharmacists from strict liability

8  applies equally to distributors.  Citing case law from Pennsylvania, Maryland, and

9  Mississippi, Merck contends courts have not held pharmacists strictly liable

10  because to do so would interfere with the doctor-patient relationship. Obviously,

11  McKesson is not a pharmacist, and there is no potential for interference with any

12  doctor-patient relationship. Moreover, the California Supreme Court has

13  distinguished pharmacists from others in the chain of distribution on the ground

14  that pharmacists provide services. See Murphy, 40 Cal. 3d at 679.  Unlike a

15  pharmacist, McKesson provides no service.

16       Next, Merck argues that under the "learned intermediary" doctrine,

17  distributors have no duty to warn and thus cannot be held strictly liable, citing two

18  unpublished district court cases where the court concluded that a distributor of a

19  prescription drug is not subject to liability. See Barlow v. Warner-Lambert Co.,

20  CV 03-1647-R, slip op. at 2 (C.D. Cal. 2003); Skinner v. Warner-Lambert Co.,

21  CV 03-1643-R, slip op. at 2 (C.D. Cal. 2003).[5]  However, both cases relied solely

22  on comment k of the Restatement (Second) of Torts, which does not exempt

23  distributors from strict liability.  Rather, comment k states that a seller of

24  pharmaceuticals is not strictly liable if the products are properly prepared and

25  _____

26       [5] Under the "learned intermediary" doctrine, a drug manufacture has no duty to
27  warn the ultimate consumer, the patient, so long as adequate warnings are given to the
   doctor.  Carlin, 13 Cal. 4th at 1108-09, 1116; Carmichael v. Reitz, 17 Cal. App. 3d 958,
28  994 (1971).

7

EXHIBIT 5

1  marketed, and proper warning is given.[6]

2      Finally Merck argues that "Plaintiffs cite no case holding a pharmaceutical

3  supplier like McKesson liable for distributing an FDA-approved medication[.]"

4  Opp. at 10. However, it is Merck's "heavy burden" to show "absolutely no

5  possibility" that Plaintiffs could prevail on their strict liability claim against

6  McKesson. See Plute 141 F. Supp. 2d at 1008; Cavallini, 44 F.3d at 259; Little,

7  227 F. Supp. 2d at 849. As Merck has not meet this burden, it has failed to

8  demonstrate that McKesson was fraudulently joined.[7] Thus, this matter must be

9  remanded because complete diversity of citizenship is lacking. See Morris, 236

10  F.3d at 1067.

11                          **B. Misjoinder of Plaintiffs**

12      The Eleventh Circuit has held that misjoinder of plaintiffs may be just as

13  fraudulent as the fraudulent joinder of a defendant against whom a plaintiff has no

14  claim. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996),

15  overruled on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072

16  (11th Cir. 2000). In Tapscott, the court explained that while "mere misjoinder" is

17  not fraudulent joinder, a party's attempt to misjoin parties may be "so egregious as

18  to constitute fraudulent joinder." Tapscott, 77 F.3d at 1360.[8] However, the Ninth

19  Circuit "has not found occasion to address Tapscott, and no other circuit has

20

21  _____

22      [6] A "seller" of a product is "any person engaged in the business of selling products

23  for use or consumption. It therefore applies to any . . . wholesale or retail dealer or
distributor[.]" Restatement (Second) Torts § 402A, cmt. f.

24      [7] In light of the court's determination that Plaintiffs may have a cause of action

25  against McKesson based on strict liability for failure to warn, the court need not address
the viability of the remaining claims against McKesson.

26

27      [8] Tapscott "concerned two groups of plaintiffs that sued separate groups of

28  defendants on almost entirely separate legal grounds." Brazina v. Paul Revere Life Ins.
Co., 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003) (citing Tapscott, 77 F.3d at 1360).

EXHIBIT 5

1  adopted its rationale."  Brazina v. Paul Revere Life Ins. Co., 271 F. Supp. 2d

2  1163, 1172 (N.D. Cal. 2003).  Because the Ninth Circuit has not adopted this

3  novel theory, the court declines to do so here.[9]

4

5  **IV. CONCLUSION**

6  Accordingly, the court GRANTS Plaintiffs' Motion to Remand.

7

8  IT IS SO ORDERED.

9

10  DATED: March 3, 2004

11

12  Nora M. Manella
United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

---

25  [9] Even under the Tapscott theory, it is unclear whether the joinder of the California
plaintiffs is "so unrelated as to constitute egregious misjoinder."  See Brazina, 271 F.
26  Supp. 2d at 1172; Tapscott, 77 F. 3d at 1360; In re Norplant Contraceptive Prods. Liab.
Litig., 168 F.R.D. 579, 581 (E.D. Tex. 1996) (finding joinder of plaintiffs proper where
27  defendants failed to adequately warn plaintiffs of risks and severity of side effects of
28  prescription contraceptives, even though plaintiffs had different doctors).

9

EXHIBIT 5

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**PRIORITY SEND**

### CIVIL MINUTES -- GENERAL

Case No.  **CV 05-4025-JFW (MANx)**                    Date:  July 5, 2005

Title:  TOMMY ALBRIGHT, et al. -v- MERCK & CO., INC., et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
None                                                                    None

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND TO STATE COURT** [filed 6/13/05; Docket No. 5];



**ORDER REMANDING ACTION TO LOS ANGELES COUNTY SUPERIOR COURT;**

**ORDER DENYING DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION AS MOOT** [filed 7/1/05]

On June 13, 2005, Plaintiffs filed a Motion to Remand to State Court. On June 27, 2005, Defendant Merck & Co., Inc. ("Merck") filed its Opposition. On July 1, 2005, Plaintiffs filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for July 11, 2005 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

On April 5, 2005, 50 individuals (collectively "Plaintiffs") filed a Complaint in Los Angeles County Superior Court against Defendants Merck and McKesson Corporation alleging the following six causes of action: (1) Negligence; (2) Strict product liability - failure to warn; (3) Breach of express warranty; (4) Breach of implied warranty; (5) Negligent misrepresentation; and (6) Fraud. On June 3, 2005, Defendant Merck filed a Notice of Removal of Action Under 28 U.S.C. § 1441(b) ("Notice of Removal").

**THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).**



Initials of Deputy Clerk sr

**EXHIBIT 6**
67

In its Notice of Removal, Defendant Merck claims that this Court has subject matter jurisdiction over this action on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because all Plaintiffs are completely diverse from Defendant Merck, and the amount in controversy exceeds $75,000. Defendant Merck argues that the citizenship of Defendant McKesson Corporation ("McKesson"), a Delaware corporation with its principal place of business in California, should not be considered in determining whether this Court has jurisdiction because McKesson has been fraudulently joined. Plaintiffs filed the present Motion to Remand on the grounds that the parties are not completely diverse, McKesson is properly joined as a defendant, and this Court therefore lacks subject matter jurisdiction over this action.

The basic requirement for jurisdiction in diversity cases is that all plaintiffs be of different citizenship than all defendants. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *see also Munoz v. Small Business Administration*, 644 F.2d 1361, 1365 (9th Cir. 1981) (noting that "[d]iversity jurisdiction requires that the plaintiffs and each defendant be citizens of different states"). Even where the complete diversity requirement is met, removal is not permitted where one of the defendants is a "citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). However, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the *settled rules* of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (emphasis added). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. *See, e.g., Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

"There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). A claim of fraudulent joinder should be denied if there is any possibility that the plaintiffs may prevail on the cause of action against the in-state defendant. *See id.* at 1008, 1012. "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so." *Lieberman v. Meshkin, Mazandarani*, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996). "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Id.* at 1008 (quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992)). Moreover, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand. *See id.*

Defendant Merck argues that Defendant McKesson was fraudulently joined because Plaintiffs failed to allege an actual connection between their alleged injuries and any conduct by Defendant McKesson. *See* Opposition at 12-15. To the contrary, Plaintiffs allege in their Complaint that Defendant McKesson "distributed and sold Vioxx in and throughout the State of California, including Los Angeles County" and "purported to warn or to inform users regarding the risks pertaining to, and assuaged concerns about the pharmaceutical Vioxx." Complaint at ¶¶ 3, 70. Plaintiffs further allege, *inter alia*, that both Defendants "actually knew of Vioxx's defective nature . . . but continued to design, manufacture, market, and sell the drug so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs." *Id.* at ¶ 106. Based on this allegation and the other allegations contained in Plaintiffs' Complaint, Plaintiffs specifically allege that "[a]s a result of . . . McKesson's conduct, Plaintiff suffered injuries

Initials of Deputy Clerk  sr

**EXHIBIT 6**

and damages." *Id.* at ¶ 108. These allegations clearly connect Defendant McKesson to Plaintiffs' alleged injuries. Although the majority of Plaintiffs' allegations are stated against all "Defendants," including McKesson, under the liberal pleading requirements, such general allegations against all "Defendants" are sufficient to charge Defendant McKesson with the alleged wrongful conduct. *See, e.g., Plute*, 141 F. Supp. 2d at 1010, n.4 (citing *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

Defendant Merck also argues that Defendant McKesson was fraudulently joined because Plaintiffs have failed to state a viable claim for relief against Defendant McKesson. *See* Opposition at 19-23. Defendant Merck contends that each of the causes of action alleged in Plaintiffs' Complaint are based on "an alleged failure to warn about the purported risks of Vioxx," and that "under California law, [McKesson] has no duty to warn." *Id.* at 19. However, Defendant Merck does not, and cannot cite any California cases holding that a distributor cannot be held liable for failure to warn, as the California state courts have not yet addressed that issue. Defendant Merck has simply failed to satisfy its heavy burden of demonstrating that there is no possibility that Plaintiffs will be able to prevail on the merits of their claims in state court, and therefore has failed to demonstrate that Defendant McKesson was fraudulently joined. Accordingly, this matter must be remanded because complete diversity of citizenship is lacking.

In a final attempt to remain in federal court, Defendant Merck claims in its Notice of Removal that the twenty Plaintiffs who are citizens of California have been "fraudulently misjoined," and argues that the Court should sever those Plaintiffs from the action and retain jurisdiction over the remaining thirty-two Plaintiffs who are completely diverse from Defendants. In support of its argument, Defendant Merck relies primarily on the Eleventh Circuit's decision in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996). In *Tapscott*, the Eleventh Circuit held that while "mere misjoinder" does not constitute fraudulent joinder, a party's attempt to misjoin parties may be "so egregious as to constitute fraudulent joinder." *Tapscott*, 77 F.3d at 1360. However, the Ninth Circuit has not found the occasion to address, nor adopt, the Eleventh Circuit's holding in *Tapscott*. *See Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003); *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004). Moreover, as the Northern District noted in *Brazina*, *Tapscott* "concerned two groups of plaintiffs that sued separate groups of defendants on almost entirely separate legal grounds." *Id.* That is simply not the situation that this Court is presented with here, and the Court declines to adopt and apply the theory set forth in *Tapscott* to this case.

For all of the foregoing reasons, Plaintiffs' Motion to Remand is **GRANTED**. This action is hereby **REMANDED** to Los Angeles County Superior Court for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

In light of the Court's Order remanding this action to Los Angeles County Superior Court, Defendant's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation, which is currently on calendar for August 1, 2005, is **DENIED as moot**.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.

Initials of Deputy Clerk  sr
**EXHIBIT 6**
69

# EXHIBIT E

ENTERED
CLERK, U.S. DISTRICT COURT

SEP 2 2005

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

PRIORITY SEND
Ent / Mc

**CIVIL MINUTES -- GENERAL**

Case No.    **CV 05-5559-JFW (CWx)**                    Date:  September 1, 2005

Title:      JUNE AAROE, et al. -v- MERCK & CO., INC., et al.

═══════════════════════════════════════════════════════════

**PRESENT:**

    **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

    **Shannon Reilly**                         **None Present**
    **Courtroom Deputy**                    **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**      **ATTORNEYS PRESENT FOR DEFENDANTS:**
         None                                    None

**PROCEEDINGS (IN CHAMBERS):**    **ORDER REMANDING ACTION TO LOS ANGELES**
                                         **COUNTY SUPERIOR COURT**

On June 2, 2005, 31 individuals (collectively "Plaintiffs") filed a Complaint in Los Angeles County Superior Court against Defendants Merck & Co., Inc. ("Merck") and McKesson Corporation ("McKesson") alleging the following eleven causes of action: (1) Strict liability - failure to warn; (2) Negligence; (3) Negligence *per se*; (4) Breach of implied warranty; (5) Breach of express warranty; (6) Deceit by concealment; (7) Negligent misrepresentation; (8) Violation of Business and Professions Code § 17200; (9) Violation of Business and Professions Code § 17500; (10) Wrongful death; and (11) Loss of consortium. On August 1, 2005, Defendant Merck filed a Notice of Removal of Action Under 28 U.S.C. § 1441(b) ("Notice of Removal").

On August 9, 2005, the Honorable R. Gary Klausner issued an Order to Show Cause Re: Lack of Jurisdiction ("OSC") and ordered Defendant Merck to respond by August 23, 2005. Judge Klausner also indicated that Plaintiffs could file a response to the OSC within the same time period. On August 11, 2005, pursuant to General Order 224, this action was transferred from the calendar of Judge Klausner to this Court. On August 22, 2005, Plaintiffs filed a Response in Support of Remand. On August 23, 2005, Defendant Merck filed its "Showing of Cause."

In its Notice of Removal and its Response to Judge Klausner's OSC, Defendant Merck claims that this Court has subject matter jurisdiction over this action on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because all Plaintiffs are completely diverse from Defendant Merck, and the amount in controversy exceeds $75,000. Defendant Merck argues that the citizenship of Defendant McKesson, a Delaware corporation with its principal place of business in California, should not be considered in determining whether this Court has jurisdiction because Defendant McKesson has been fraudulently joined.

✓ Docketed
✓ Copies / NTC Sent
✓ JS - 5 / JS - 6
___ JS - 2 / JS - 3
___ CLSD    cc. Orden, letter 4

Initials of Deputy Clerk _sr_

EXHIBIT 7
70

The basic requirement for jurisdiction in diversity cases is that all plaintiffs be of different citizenship than all defendants. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *see also Munoz v. Small Business Administration*, 644 F.2d 1361, 1365 (9th Cir. 1981) (noting that "[d]iversity jurisdiction requires that the plaintiffs and each defendant be citizens of different states"). Even where the complete diversity requirement is met, removal is not permitted where one of the defendants is a "citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). However, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the *settled rules* of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (emphasis added). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. *See, e.g., Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

"There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). A claim of fraudulent joinder should be denied if there is *any possibility* that the plaintiffs may prevail on the cause of action against the in-state defendant. *See id.* at 1008, 1012. "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a *possibility* that they may do so." *Lieberman v. Meshkin, Mazandarani*, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996) (emphasis added). "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Id.* at 1008 (quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992)). Moreover, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand. *See id.*

Defendant Merck argues that Defendant McKesson was fraudulently joined because "Plaintiffs' factual allegations against McKesson are vague at best, including only the nonspecific and ambiguous allegations that McKesson 'distributed and sold Vioxx in and throughout [California and Arizona], which was ingested by . . . plaintiffs' and that McKesson 'knew of should have known' about the alleged tortuous conduct that plaintiff attribute to Merck." Response to OSC at 2 (quoting Complaint at ¶¶ 4, 5, 107). However, contrary to Defendant Merck's assertions, these allegations are sufficient to "allege an actual connection between the defendant's alleged conduct and the plaintiff's purported injury," and under the liberal pleading requirements, are sufficient to charge Defendant McKesson with the alleged wrongful conduct. *See, e.g., Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d at 1010, n.4 (citing *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

Defendant Merck also argues that Defendant McKesson was fraudulently joined because Plaintiffs' claims against McKesson are "untenable." *See* Response to OSC at 8. Defendant Merck contends that each of the causes of action alleged in Plaintiffs' Complaint are based on "an alleged failure to warn about the purported risks of Vioxx, and McKesson has no duty to warn under California law." *Id.* In support of its argument, Defendant Merck cites a California Supreme Court decision involving the liability of pharmacists for defective drugs and then concludes that "[t]he same rule applies (and should apply) to pharmaceutical wholesale distributors. *Id.* at 9. However, Defendant Merck does not, and cannot cite any California cases holding that a distributor cannot be held liable for failure to warn, as the California state courts have not yet

Initials of Deputy Clerk _sr_

**EXHIBIT 7**

71

addressed that issue. Defendant Merck has simply failed to satisfy its heavy burden of demonstrating that there is no possibility that Plaintiffs will be able to prevail on the merits of their claims against Defendant McKesson in state court, and therefore has failed to demonstrate that Defendant McKesson was fraudulently joined.

Accordingly, complete diversity of citizenship is lacking and this action is hereby **REMANDED** to Los Angeles County Superior Court for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.

Initials of Deputy Clerk __sr__
**EXHIBIT 7**
72

# EXHIBIT F

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11    ELIZABETH MAHER,                          CASE NO. 07CV852 WQH (JMA)

12                              Plaintiff,      ORDER GRANTING PLAINTIFF'S
                     vs.                        MOTION TO REMAND
13
      NOVARTIS PHARMACEUTICALS
14    CORPORATION, et al.,

15                             Defendants.

16    HAYES, Judge:

17          Pending before the Court is Plaintiff's motion to remand to state court. (Docs. #11). The

18    Court finds this matter suitable for submission on the papers without oral argument pursuant to Civil

19    Local Rule 7.1(d)(1).

20                                    BACKGROUND

21          On March 23, 2007, Plaintiff Elizabeth Maher (Plaintiff) filed a Complaint in the Superior

22    Court of California against Defendants Novartis Pharmaceuticals Corporation (Novartis), Novartis

23    Corporation[1] and McKesson Corporation (McKesson).  Notice of Removal (Doc. # 1), ¶ 1.  The

24    Complaint alleges state law claims against Novartis and McKesson for injuries sustained by Plaintiff

25    when Plaintiff ingested the prescription drug Tegretol, an anti-seizure medication. Notice of Removal,

26    Ex. 1 (Complaint), ¶ 3.  Specifically, the Complaint alleges state law claims for (1) strict products

27    _____

28          [1] Plaintiff voluntarily dismissed Defendant Novartis Corporation on June 11, 2007. (Doc. #
      10).

1   liability, (2) common law fraud, (3) negligence, (4) negligent misrepresentation, (5) misrepresentation,

2   (6) express warranty, (7) implied warranty, and (8) violations of the California Business & Professions

3   Code. Compl., ¶¶ 42-70.

4         Plaintiff is a resident of the State of California. Notice of Removal, ¶ 4; Compl., ¶ 2.

5   Defendant Novartis is a Delaware corporation with its principal place of business in the State of New

6   Jersey. Compl., ¶ 4; Notice of Removal, ¶ 5. Plaintiff alleges that Novartis, "[a]t all times relevant

7   . . . was in the business of designing, testing, manufacturing, labeling, advertising, marketing,

8   promoting, selling and distributing pharmaceuticals, including Tegretol, and other products for use

9   by the mainstream public, including Plaintiff." Compl., ¶ 10. Defendant McKesson is a Delaware

10  corporation with its principal place of business in the State of California. Compl., ¶ 7; Notice of

11  Removal, ¶ 7. Plaintiff alleges that McKesson, "[a]t all times relevant . . . was in the business of

12  labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including

13  Tegretol, and other products for use by the mainstream public, including Plaintiff." Compl., ¶ 11.

14        Plaintiff alleges that Defendants Novartis and Mckesson, or their representatives,

15  "manufactured, marketed, distributed and sold" Tegretol to Plaintiff. Compl., ¶ 13. Plaintiff further

16  alleges that Defendants Novartis and McKesson knew that Tegretol was a dangerous drug and failed

17  to adequately warn physicians and patients about its dangers. Compl., ¶ 17. Plaintiff alleges that

18  Defendants made false statements about Tegretol and improperly promoted the Tegretol taken by

19  Plaintiff for off-label uses. Compl., ¶ 19.

20        On April 11, 2007, Plaintiff served Defendant Novartis with the Complaint. Notice of

21  Removal, ¶ 2. On May 11, 2007, Novartis filed Notice of Removal pursuant to 28 U.S.C. § 1441(b).

22  Notice of Removal (Doc. # 1). The Notice of Removal asserts diversity jurisdiction and contends that

23  the citizenship of Defendant McKesson is irrelevant because McKesson is a sham Defendant

24  fraudulently joined. Notice of Removal, ¶ 7. The amount in controversy exceeds $75,000. Notice

25  of Removal, ¶¶ 9-10; Compl., ¶ 75, 84, 87-88.

26        On June 1, 2007, Plaintiff moved to remand for lack of subject matter jurisdiction. (Docs. #

27  8, 11).

28  /

- 2 -

07CV852 WQH (JMA)

1

**STANDARD OF REVIEW**

2      "A federal court can exercise removal jurisdiction over a case only if it would have had

3  jurisdiction over [the case] as originally brought by the plaintiff." *Snow v. Ford Motor Co.*, 561

4  F.2d 787, 789 (9th Cir. 1977); *see also* 28 U.S.C. § 1441. Removal based on diversity jurisdiction

5  under 28 U.S.C. § 1332 requires complete diversity of citizenship. *Morris v. Princess Cruises,*

6  *Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *see also* 28 U.S.C. § 1332. Removal is not permitted

7  where one of the defendants "is a citizen of the State in which such action is brought." 28 U.S.C.

8  § 1441(b).

9      The party seeking removal has the burden of establishing federal jurisdiction, *Holcomb v.*

10  *Bingham Toyota,* 871 F.2d 109, 110 (9th Cir. 1989), and there is a "strong presumption against

11  removal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006),

12  *citing Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). In determining the existence of

13  removal jurisdiction, a court may ignore a "fraudulently joined" defendant. *Morris v. Princess*

14  *Cruise Lines,* 236 F.3d 1061, 1067-68 (9th Cir. 2001). "Fraudulent joinder is a term of art"–when

15  a "plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious

16  according to the settled rules of the state, the joinder of the resident defendant is fraudulent."

17  *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987).

18      A district court evaluating fraudulent joinder properly considers the allegations of the

19  complaint and any evidence submitted by the parties showing the joinder is fradulent. *Ritchey v.*

20  *UpJohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe,* 811 F.2d at 1339. "All disputed

21  questions of fact and all ambiguities in the controlling state law" must be resolved in favor of the

22  non-removing party, and "any doubts concerning the sufficiency of a cause of action due to

23  inartful, ambiguous, or technically defective pleading must be resolved in favor of remand."

24  *Aaron,* CV 05-4073-JFW (MANx), 2005 U.S. Dist. LEXIS 40745, *5-6 (C.D. Cal. July 26, 2005);

25  *see also Little v. Purdue Pharma, LP,* 227 F. Supp. 2d 838, 849 (S.D. Ohio 2002) ("a federal court

26  should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in

27  an area yet untouched by the state courts.").

28

07CV852 WQH (JMA)

## DISCUSSION

Plaintiff moves for remand to state court for lack of federal subject matter jurisdiction. Plaintiff, a citizen of the State of California, contends that there is no diversity jurisdiction because Defendant McKesson is a legitimate defendant with its place of business in the State of California. Plaintiff contends that a distributor such as Defendant McKesson is liable under California law if it fails to properly warn physicians and patients of a prescription drug's dangerous propensities.

Defendant Novartis contends that Plaintiff has not and cannot state a claim against Defendant McKesson under California law. Defendant Novartis asserts that Defendant McKesson is fraudulently joined in this action to defeat diversity and that removal is proper based on diversity jurisdiction when one ignores Defendant McKesson's citizenship. Defendant Novartis contends that Defendant McKesson is "fraudulently joined to this action as a 'sham' defendant" and "there is no possible way that Plaintiff can prove a cause of action against McKesson." Notice of Removal, ¶ 7. Defendant Novartis contends that a distributor of prescription drugs cannot be held liable for damages in a products liability claim under California law and that the learned intermediary doctrine precludes Plaintiff from stating a claim against Defendant McKesson. Defendant Novartis explains that Plaintiff's claims of inadequate warning, negligence, fraud, negligent misrepresentation and misrepresentation against Defendant McKesson are not viable because a distributor of prescription drugs has no duty to warn under California law.

The general rule under California law is that both a manufacturer and a distributor can be strictly liable for injuries caused by a defective product. *Bostick v. Flex Equipment Co.*, 147 Cal. App. 4th 80, 88 (2007); *Anderson v. Owens-Corning Fiberglass Corp.*, 53 Cal. 3d 987, 994 (1991); *see also Daly v. General Motors Corp.*, 20 Cal. 3d 725, 739 (1978); *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 262-63 (1964). In *Brown v. Superior Court*, 44 Cal. 3d 1049 (1988), the California Supreme Court examined strict liability for drug manufacturers and concluded that "a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id.* at 1069. In prescription drug cases, liability under California state law is premised on a defendant's failure to

1    warn of knowable risks.[2]  *Id.*  The California Supreme Court has recognized an exception in strict

2    liability for pharmacists in prescription drug cases, *see Murphy v. E.R. Squibb & Sons, Inc.*, 40

3    Cal. 3d 672, 681 (1985)[3], however, it has not addressed liability in prescription drug cases for

4    distributors and other potential defendants in the "commercial chain."  *Daly*, 20 Cal. 3d at 739

5    ("Regardless of the identity of a particular defendant or of his position in the commercial chain the

6    basis of his liability remains that he has marketed or distributed a defective product.").  Defendant

7    Novartis contends that Plaintiff cannot maintain her claims against Defendant McKesson because

8    the principles that the California Supreme Court relied upon to explain liability for drug

9    manufacturers in *Brown* and to create an exception in strict liability for pharmacists in prescription

10   drug cases apply to prevent recovery against distributors in products liability cases involving

11   prescription drugs.  Defendant's Opp. To Mot. To Remand at 3-6.

12        In the context of fraudulent joinder, a number of federal district courts have addressed

13   whether a California distributor can be liable in a prescription drug case for failure to warn, and

14   concluded that distributor defendants were not fraudulently joined because a distributor could

15   possibly be liable for failure to warn in prescription drug cases under California law.  *See Aaron*,

16   CV 05-4073-JFW (MANx), 2005 U.S. Dist. LEXIS 40745, *8 (C.D. Cal. July 26, 2005)

17   (defendant failed to meet heavy burden of demonstrating that there is no possibility that plaintiffs

18   will be able to prevail); *Black*, CV 03-8730 NM (AJWx), 2004 U.S. Dist. LEXIS 29860, *13-14

19   (C.D. Cal. Mar. 3, 2004) (defendant failed to meet heavy burden to show "absolutely no

20   possibility" that plaintiffs could prevail); *Martin*, No. S-05-750, 2005 WL 1984483, *3-4 (E.D.

21   Cal. Aug. 17, 2005) (defendant failed to meet heavy burden to show to a near certainty that cause

22   of action is precluded under California law); *see also Becraft v. Ethicon*, No. C 00-1474 CRB,

23   2000 U.S. Dist. LEXIS 17725 (N.D. Cal. Nov. 2, 2000) (concluding that a distributor can be liable

24

25        [2] Though the rule articulated in *Brown* uses the words "strict liability," the California Supreme
     Court noted that the rule "rings of negligence" and distinguished the rule from pure strict liability.

26   *Brown*, 44 Cal. 3d at 1058-59.  The Court concluded that "a drug manufacturer's liability for a
     defectively designed drug should not be measured by the standards of strict liability."  *Id.* at 1061.

27        [3] The California Supreme Court created the pharmacy exception articulated in *Murphy* and
     applicable in strict liability cases before it decided *Brown* and held that there was no pure strict

28   liability in prescription drug cases, only a hybrid (negligence/strict liability) form of liability for
     failure to warn.  *Brown*, 44 Cal. 3d at 1058-1061.

07CV852 WQH (JMA)

1    under California law for defective sutures); *but see Aronis v. Merck*, NO. CIV. S-05-0486 WBS

2    DAD, 2005 U.S. Dist. LEXIS 41531, *3 (E.D. Cal. May 3, 2005) (plaintiff did not state claim

3    against distributor under California law because plaintiff failed to allege causal connection);

4    *Skinner v. Warner-Lambert Co.*, Case No CV-03-1643-R (Rzx) (C.D. Cal. Apr. 28,

5    2003)(distributor of prescription drugs is not subject to strict liability). On or about May 22, 2006,

6    a California State Superior Court Judge refused to exempt distributors from strict liability in a

7    prescription drug case involving the drug Vioxx. The Superior Court Judge stated "Defendants

8    point to no authority that makes an exception to the doctrine of strict liability for distributors in an

9    industry analogous to the prescription pharmaceutical industry. This court will not be the first to

10   make such an exception at the pleading stage." *See Declaration of Robert Clarke in Support of*

11   *Plaintiff's Motion to Remand*, Ex. 3 at 40-49 (*In re Vioxx Cases*, Case No. JCCP 4247 "Revised

12   Ruling on Request for Reconsideration," May 16, 2006)

13         The general rule under California law is that distributors and other "participants in the

14   chain of distribution" are strictly liable in defective products cases. *Bostick*, 147 Cal. App. 4th at

15   88. This Court has been unable to find, nor has either party cited, a case under California law

16   which creates an exception in strict liability for distributors in prescription drug cases. This Court

17   cannot conclude that it is obvious that the general rule of distributor liability does not apply under

18   the allegations in this case. *McCabe*, 811 F.2d at 1339. The Court further concludes that the

19   learned intermediary doctrine does not prevent Plaintiff from stating a claim against McKesson

20   because Plaintiff has alleged that McKesson failed to properly warn physicians, including

21   Plaintiff's physician. *Brown*, 44 Cal. 3d at 1062; *see also Carlin v. Superior Court*, 13 Cal. 4th

22   1104, 1118 (1996).

23         In the Complaint, Plaintiff alleges that Defendant McKesson distributed, promoted,

24   labeled, and marketed Tegretol to Plaintiff, and that Plaintiff was injured when she used Tegretol.

25   Plaintiff further alleges that Defendant McKesson knew that Tegretol was dangerous, yet failed to

26   warn physicians and patients of the drug's dangerous propensities. The Court concludes that it is

27   not "obvious" that Plaintiff has failed to state a claim against Defendant McKesson under settled

28   California law, *McCabe*, 811 F.2d at 1339, and that Defendant Novartis has not met its "heavy

07CV852 WQH (JMA)

1   burden" to show that McKesson has been fraudulently joined. *Plute v. Roadway Package Sys.,*

2   *Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001; *see also Black*, CV 03-8730 NM (AJWx), 2004

3   U.S. Dist. LEXIS 29860, *13-14 (C.D. Cal. Mar. 3, 2004), *citing Purdue Pharma, LP*, 227 F.

4   Supp. 2d at 849 ("a federal court should hesitate before pronouncing a state claim frivolous,

5   unreasonable, and not even colorable in an area yet untouched by the state courts."). Accordingly,

6   this matter is remanded to state court.

7                            **CONCLUSION**

8       IT IS HEREBY ORDERED that (1) Plaintiff's motion to remand (Doc. # 11) to state court

9   is GRANTED; (2) Defendant's evidentiary objections are DENIED as moot; and (3) this case is

10   hereby remanded to the California Superior Court.

11   DATED:  August 10, 2007

12                               *William Q. Hayes*

13                               **WILLIAM Q. HAYES**
                                United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

              07CV852 WQH (JMA)

# EXHIBIT G

1  DAVID C. ANDERSEN (State Bar No. 194095)
2  THE MILLER FIRM, LLC
3  108 Railroad Avenue
4  Orange, VA 22960
5  Telephone: (540) 672-4224
6  Facsimile: (540) 672-3055
7  Email: dandersen@doctoratlaw.com

8

9  **UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA**
10  **SAN FRANCISCO DIVISION**

11

12  Case No. C 08-03394 WDB

13
14  RONALD T. HAMMER,                          :
15  REPRESENTATIVE OF THE                      :
16  ESTATE OF RETHA M. SPAIN                   :    DECLARATION OF
17                                             :    DAVID C. ANDERSEN IN
18  Plaintiff,                                 :    SUPPORT OF
19                                             :    PLAINTIFF'S MOTION
20                                             :    FOR REMAND AND
21                                             :    SUPPORTING
22                                             :    MEMORANDUM
23  v.                                         :
24                                             :
25                                             :
26  SMITHKLINE BEECHAM                         :
27  CORPORATION                                :
28  d/b/a GLAXOSMITHKLINE and                  :
29  MCKESSON CORPORATION                       :
30                                             :
31  Defendants                                 :
32

33      I, DAVID C. ANDERSEN, declare:

34      1.    I am an attorney admitted to practice before all courts of the State of California and

35  am an Associate with The Miller Firm, LLC, attorneys for Plaintiff in this action.  I make this

36  Declaration based on my personal knowledge, in support of Plaintiff's Motion For Remand and

1

1  Supporting Memorandum.  I would and could competently testify to the matters stated in this

2  Declaration if called as a witness.

3        2.     A true and accurate copy of Notice of Ruling with attached Revised Ruling on

4  Request for Reconsideration by Judge Victoria Chaney), *Vioxx Cases*, California Superior Court for

5  Los Angeles County, Case No. JCCP 4347, filed on or about May 22, 2006, attached as **Exhibit A.**

6        3.     A true and accurate copy of *Reid, et al., v. Merck & Company, Inc., et al.*, Case No.

7  CV 02-00504 NM (RZx) attached as **Exhibit B.**

8        4.     A true and accurate copy of *Black, et al., v. Merck & Company, Inc., et al.*, Case No.

9  CV 03-8730 NM (AJWx) attached as **Exhibit C.**

10        5.     A true and accurate copy of *Albright, et al. v. Merck & Co., Inc., et al.*, No CV 05-

11  4025 JFW (MANx) attached as **Exhibit D.**

12        6.     A true and accurate copy of *Aaroe, et al., v. Merck & Co., Inc., et al.*, No CV05-

13  5559 JFW (CWx) attached as **Exhibit E.**

14        7.     A true and accurate copy of *Maher v. Novartis Pharmaceuticals Corp., et al.*, No.

15  07-852 WQH (JMA) attached as **Exhibit F.**

16        I declare under penalty of perjury under the laws of the United States of America that the

17  foregoing is true and correct.  Executed on this 11th day of August, 2008, in Orange, Virginia.

18

2

1

2    Dated: 8/11/2008                          Respectfully submitted,

3

4

5                                                      /s/
6                                             David C. Andersen (Bar No. 194095)
7                                             THE MILLER FIRM, LLC
8                                             Attorneys for Plaintiff
9                                             108 Railroad Avenue
10                                            Orange, VA 22960
11                                            Phone: (540) 672-4224
12                                            Fax: (540) 672-3055
13                                            Email:dandersen@doctoratlaw.com
14

3